Day v. Allaire.

STANLEY DAY, and wife, appellants.

. v.

ISAAC S. ALLAIRE, respondent.

It is discretionary in a court of equity, if the application for rehearing is promptly made, to open a final decree, where there is a meritorious defence, and the defendant (a married woman) has been deprived of such defence by the negligence of her solicitor in obtaining proofs and presenting them to the court.

On appeal from a decree advised by the vice-chancellor, whose opinion is reported in *Allaire* v. *Day, 3 Stew. 231.*

Day *v.* Allaire.

*Mr. Nelson Runyon,* for appellants.

LAW POINTS:

I. The answer, being sworn to and being responsive to the bill, and the allegations of fraud being clearly and unequivocally denied, must be taken as true, unless the circumstances show that it cannot be true. *Morris & Essex R. R. Co.* v. *Blair, 1 Stock. 635; Brown* v. *Bulkley, 1 McCart. 294; Bird* v. *Styles, 3 C. E. Gr. 297; Force* v. *Dutcher, Id. 401.* And the uncorroborated testimony of the complainant is insufficient to overcome a responsive answer. *Stearns* v. *Stearns, 8 C. E. Gr. 167; Calkins* v. *Landis, 6 C. E. Gr. 133.*

II. To make this conveyance void under the act, it must be shown that both parties concurred in the fraud. The grantee must participate in it, or have knowledge of the fraudulent design of the grantor. *Merchants Bank* v. *Northrup, 7 C. E. Gr. 58, 8 C. E. Gr. 582; Maguire* v. *Thompson, 7 Pet. 348.*

III. A debtor in failing circumstances may lawfully prefer a creditor. *Garr* v. *Hill, 1 Stock. 210; Coley* v. *Coley, 1 McCart. 350; Stew. Dig. 53, Assignment (a) 1.* And this principle applies with greater force to a *trust* debt, than to an ordinary contract debt.

IV. A deed taken in the name of a wife for property purchased with her separate estate, is no fraud upon creditors, even if taken in her name to avoid any claim by judgment against her husband. *Quidort* v. *Pergeaux, 3 C. E. Gr. 472; Beals* v. *Storm, 11 C. E. Gr. 372.*

V. If the house and lot in this case were a voluntary settlement on the wife, and she furnished none of the consideration, and if, at the time, the husband owed the complainant nothing, the complainant cannot impeach the wife's title, without proof that the husband, in making such settlement, intended to contract the debt in question, and defraud the complainant. *Carpenter* v. *Carpenter, 12 C. E. Gr. 502.*

Day *v.* Allaire.

VI. If a part only of the purchase price of the premises in question was furnished by the wife, the court will protect her interest, unless she acted collusively with her husband in placing his property beyond the reach of his creditors.

VII. The books of Stanley Day were sufficiently proved to be admitted in evidence, at least for the purpose of explaining or disproving the fraud implied in the alleged admission by Day, that he had falsified them by making his wife appear his largest creditor, on the last leaf of his ledger. The simple inspection of the books will demonstrate the falsity of such admission.

VIII. No presumption against the wife, nor of any participation by her in the fraud of her husband, if he perpetrated any, can arise from the fact that she permitted him to receive and use in his business and invest in her name when opportunity offered, her own personal means and property.

IX. No admissions or declarations of Day regarding the *bona fides* of this transaction, not made in the presence of his wife, can bind her, or affect her vested rights.

X. As all the alleged admissions in this cause are verbal—not one in writing—the evidence of them should be received with great caution. Evidence of this kind, consisting in the mere repetition of oral statements, is subject to imperfection and mistake, and its value is much diminished if a long time has intervened between the date of such admissions and the date of the evidence of them.

XI. Although Mrs. Day had no personal knowledge that the New Market property was purchased with the proceeds of her West Farms property, and all the knowledge she possessed on that subject was derived from her husband, the burden of proving that the purchase-money therefor was provided by her husband, and was his own individual money, is on the complainant, and her information, derived from her husband on that point, is good to rebut and repel

the allegation of fraud, until the complainant affirmatively proves that the consideration of such purchase was furnished by the husband.

XII. If Day was insolvent on May 24th, 1870, and Mrs. Day knew it—and if this purchase was made to keep Day's creditors from obtaining any lien on the land, or on the consideration paid for it—it is no fraud on Day's creditors, provided it was purchased with Mrs. Day's money. It is the property of the debtor (and not that of any other person, though in his possession) that must go to satisfy his debt.

XIII. The negligent management of the appellants' case by the solicitor, and his desertion of it, after the proofs were taken, entitle the appellants to the favorable consideration of the court.

POINTS OF FACT:

The reversal of this decree is asked for on two grounds: First, surprise; second, merits.

No question is made as to the first point. We insist the second is shown by the following propositions of fact:

I. The defendant Day was not indebted to complainant, on May 24th, 1870, when the deed was taken.

II. There is no evidence that Day was insolvent on May 24th, 1870. Neither the complainant nor any of his witnesses swear to it. All the conversations with Day concerning his insolvency were after the purchase of the New Market property. The complainant believed him solvent up to the time he endorsed the first note on which the judgment was founded, and that was December, 1870.

III. There is no satisfactory proof that Mrs. Day knew of his insolvency at the date of the deed, even if he then was insolvent; and no proof that she knew the purchase was made to delay or defeat his creditors, if it was so made.

IV. The house and lot were purchased with the money and property of Mrs. Day, being the proceeds of the West

Farms property. This appears, first, by the sworn answer of both defendants; second, by the letters (if admitted) of Beck, Mrs. Day's brother; third, by Day's books; fourth, by the direct evidence of Mrs. Day, as to receiving $11,000 from England, and the purchase with it of the West Farms property; fifth, by the evidence of Bellamy, the New Market purchase was the mere transfer of an investment from New York to New Jersey.

V. The West Farms property stood in the name of Mrs. Day, and was purchased in 1867 and 1868, with her own money. The point is made, not that Mrs. Day had no money, then—the witnesses all swear she had money—but that she did not have £1,700, as she swears. The admissions of the wife are attempted to be shown—that she did not receive so much money from England as she expected; that she had lost money by the blowing down of a windmill. This may easily be reconciled by remembering that she received money several times from England. Bellamy swears that Day received money at various times from England—over £1,500. There can be no reasonable doubt that the West Farms investment was made with Mrs. Day's funds. But, even if made with her husband's funds, the complainant cannot question it now.

VI. Day never, in fact, made any false account in his books, making his wife his largest creditor. If Day made any such admission as that, he admitted a falsehood; and the best evidence of whether he admitted a lie or the truth, is the inspection of the books themselves. We are anxious to have the court inspect the books, and are willing that this cause shall stand or fall by that test. But if he made the declarations, and actually fixed up his books to make his wife his largest creditor, is Mrs. Day to suffer thereby?

VII. The evidence, by the answer of Day, is not overcome by the evidence produced by the complainant of his admissions.

(1st) Mrs. Day had an opportunity to go on the stand and make her statement. Stanley Day had not. Why, I cannot tell. Whether his counsel was treacherous or merely stupid, does not appear. Day wants to have an opportunity of testifying, and always wanted it.

(2d) Kate Milner, who proves the greater part of these admissions, was sworn twice—once in 1873, and again in 1874. She assumes to remember the details of mere casual conversations, in which she had no personal interest, had in 1868, 1869 and 1870. Her evidence should be carefully scanned.

(3d) These alleged admissions do not, on a careful examination, prove the points following:

(*a*) They do not prove that Day was insolvent when the New Jersey property was purchased.

(*b*) They do not prove that one dollar of the New Jersey purchase was the personal money or property of Stanley Day.

(*c*) They do not prove that Day secreted, invested or transferred a dollar of his money to keep it from his creditors.

(*d*) They do prove that the Boice property was purchased by Day, and the title put in Mrs. Day's name; and that the title to the adjacent lot was at first taken in Day's name, and afterwards conveyed to his wife through Howie.

(*e*) They do prove that Day, in 1870, owed money, besides what he owed the complainant; that some of his debts were of a fiduciary character; that he was afraid he would be arrested in New York, and was anxious to get to New Jersey.

(*f*) They also prove that he was afraid that an attempt would be made to take his wife's property for his debts, and this suit justifies his fears.

(*g*) The admission testified to by Mr. Milner, that Day said his object in going to New Jersey was to save his property in case of his failure, was made in 1871, long enough

Day *v.* Allaire.

after his purchase. And he may have called, and probably did call, his " wife's property," his property.

(*h*) If we admit what is perfectly manifest in this case, that Day actually feared his creditors might take his wife's property for his debts, it explains many of his admissions and much of his suspicious conduct.

(*i*) It is proved that he said he took $1,100 out of his business to pay on the New Market property. But he had all his wife's property in his business and in charge. When he bought that property, he had charge of the entire proceeds of the West Farms sale. If he took $1,100 of his own money to pay on that purchase, he had five times that amount of his wife's money in his hands.

Boice actually took part of his pay for that property, in this very clothing exchanged with Bradford for the West Farms property.

VIII. Is Mrs. Day to suffer the penalty of being obliged to pay her husband's debts, because she permitted him to receive, use, invest, and ostensibly treat as his own, her money? There is no proof that he used it to acquire any false or fictitious credit. He never invested a dollar of it in his own name, so far as the proof shows. The complainant does not say he trusted Day on account of any credit which the possession of his wife's money gave him. As a matter of fact, his wife's money was always invested in *her own name*, notoriously and openly, excepting the time intervening between the sale of the West Farms property and the purchase of the New Jersey property (about three months), and the complainant's debt was not contracted during that three months.

IX. The complainant's right to recover rests, and must rest, on the theory that the West Farms investment was a voluntary settlement by Day upon his wife. If he admits the West Farms property was Mrs. Day's, his case is gone. He must, therefore, insist not only that it was a voluntary settlement, but that it was fraudulently made, with a view

to this future indebtedness and to protect his property from his future creditors.

It is insisted that the evidence is abundant that this property was purchased with Mrs. Day's money; but if it should be conceded that the husband himself furnished the means to purchase it, there is no evidence in the whole case going to show that it was fraudulently done, and with a view to protect it from future creditors. The court will not assume, without proof, that it was fraudulently made, and thus reverse the rules of law in proving fraud.

REPLY TO POINTS OF RESPONDENT:

(1st) If the affiants were residents of a foreign country at the time the answer was sworn to, the oaths were properly taken before a consular agent.

Mrs. Day, in her testimony, swears that she had resided in Stratford, Canada, since January, 1873, and she was, therefore, a resident of a foreign country at the time the answer was sworn to. The presumption is, her husband resided there, also. The point of the decision in *2 Gr. Ch. 485*, cited by respondent, is, that the place of taking an affidavit is a matter *in pais*, and, if legally questioned, must be proved *aliunde*. But no objection was taken to the sufficiency of this affidavit, in the whole history of this case, and, it is submitted, it is now too late to raise it.

(2d) As to the point that the "appellants have taken no oath as to the truth of their answer," the reply is, they took the ordinary oath and the one prescribed by the forms. There is nothing in the case of *Brown* v. *Bulkley, 1 McCart. 299*, to sustain the point for which it is cited.

*Mr. A. Zabriskie*, for respondent.

I. If the conveyance was made to the appellant, Mrs. Day, in order to hinder, delay or defraud, or in any way put off the creditors of the appellant, Mr. Day, the transaction is fraudulent and void, under whatever pretence the

act may be cloaked. And this applies both to antecedent and subsequent creditors. *Green* v. *Tantum, 4 C. E. Gr. 105; Belford* v. *Crane, 1 C. E. Gr. 271; Beekman* v. *Montgomery, 1 McCart. 108.*

II. Does the evidence show facts from which the conclusion will be made that the transaction was fraudulent?

First—The evidence introduced by the complainant.

(*a*) It is shown that, in 1869 (the conveyance was made in 1870), the respondent loaned Stanley Day $5,000 in United United States bonds.

(*b*) The answer admits that Stanley Day was indebted to respondent in another sum of $4,000, on which judgment was recovered, and that Day had nothing in this state on which to levy.

(*c*) It is shown that, at or about the time this property was put in the name of the wife of the appellant, Stanley Day, he was insolvent, and was expecting to fail any day, and was desirous of getting out of the state of New Jersey, to escape his creditors and save his property.

(*d*) That, after Stanley Day became insolvent, he, by his own admissions to two persons, had fixed his books so that his wife would appear not only as a creditor, but his largest creditor.

(*e*) That the appellant distinctly admitted that he desired all his property to be in his wife's name, as he expected to fail, and wanted it to be out of the reach of his creditors.

(*f*) The answer admits that the property cost over $6,000, and two witnesses prove that the appellant, Mrs. Day, admitted that she had only about $1,700.

(*g*) It is further proved that the appellant, Stanley Day, took money from his business to pay for this property.

Second—The evidence of appellants.

The appellants rely for their defence to the bill of complaint, on (*a*) their answer; (*b*) the testimony of Mrs. Day and John Bellamy; (*c*) the books of account of the appellant, Stanley Day.

(a) The answer.

(1) The answer cannot be used as evidence, but can only be treated as a pleading, as there is nothing on the face of the affidavit to show the court that the person before whom it was sworn was authorized to take an affidavit by the laws of this state. It was taken before a United States consular agent, who is only authorized to take the affidavits of those being in foreign countries. And neither the caption of the affidavit nor the jurat shows where it was taken.

There must be something on the affidavit to show that the officer was *prima facie* authorized to take it. *Perkins* v. *Collins, 2 Gr. Ch. 485.*

The appellants have taken no oath as to the truth of their answer, and it is the oath that gives weight to the answer. *Brown* v. *Bulkley, 1 McCart. 299.*

(2) The weight of the answer, as evidence, is entirely overthrown:

(a) By the appellant's (Stanley Day's) proven admissions in direct opposition to the facts, or some of them, stated in his answer, and his distinct acknowledgment of having altered his books to defraud his creditors, taken together with his failure to appear as a witness to substantiate the truth of his answer, and to either contradict or explain his proven admissions contrary to his answer.

(b) By the cross-examination of Mrs. Day, it appears that, when she swore to the truth of that answer, she had no personal knowledge of most of the statements contained therein, but her knowledge was derived from what others told her. An answer of this kind is entitled to no credit. *Bent* v. *Smith, 7 C. E. Gr. 567; Stevens* v. *Post, 1 Beas. 408.*

(3) The answer is overcome by the oath of more than one witness.

(b) The testimony of Bellamy and Mrs. Day.

(1) Mr. Bellamy's testimony is brief, and, on cross-examination it appears, was made up wholly of what he had learned from others, chiefly from Stanley Day.

Day *v.* Allaire.

· (2) The appellant's (Mrs. Day's) testimony is given at some length. On her direct examination, her testimony is plain and clear. She says, in substance, that the New Market property was purchased with the proceeds of clothing derived from the sale of the West Farms property, which was purchased with money she received from England. This is a straight story. But when we turn to the cross-examination, on reading it from beginning to end, we find that it is wholly made up of admissions that everything she has been testifying to in her direct examination was derived wholly from information given her by her husband. She had absolutely no personal knowledge of the transactions she was testifying about. Her knowledge concerning the money from England, and what became of it, except as derived from her husband, amounts to nothing. Personally, she absolutely knew nothing as to whose money was used in the purchase of either the West Farms or New Market property. The only person who knew about these transactions, was the appellant, Stanley Day, and, although he had two years so to do, he has failed to appear as a witness. Her testimony is utterly worthless; his might have been of value to one side or the other.

It will be observed that, although Mrs. Day came from Canada to be examined, she left all the deeds, receipts and other papers relating to these transactions, in Canada.

(c) Mr. Day's books of account.

These books were not admitted as evidence by the court below, and very properly so, as they were only marked for identification, and neither proved nor offered in evidence.

The opinion of the court was delivered by

SCUDDER, J

This appeal is taken from the order of the chancellor, made on the advice of the vice-chancellor, discharging the order to show cause why the final decree entered in this

cause should not be opened, and the defendants let in to be. heard and make defence by counsel.

The petition of Maria Isabella Day, wife of Stanley Day, one of the defendants in the above cause, shows that, on October 10th, 1872, the complainant, Isaac S. Allaire, filed a bill to subject to the lien of a judgment for $4,704.59, which said Allaire had obtained against her husband, certain lands in Middlesex county, which, it was alleged, had been conveyed to her in fraud of her husband's creditors. The defendants answered the bill of complaint, under oath, denying the fraud, and alleging a full consideration paid by the wife, through the agency of her husband, from moneys received by him belonging to her separate estate. The petition further shows that a solicitor of the court was duly retained to defend the action; that testimony was taken upon both sides; that the solicitor abandoned the case without the knowledge or consent of the defendants, omitting and refusing to take the testimony of several material witnesses, and did not present the evidence taken, or argue the cause before the chancellor, although his fees, costs and charges were fully paid; that, by such neglect, the complainant's case alone was heard, the defendants' testimony was not read, and they were not represented before the chancellor. With these disadvantages, the decree against which they pray relief in their petition was made against them. ·

It was properly held that this petition showed surprise, and that the solicitor's misconduct was a breach of duty which the defendants were not bound to anticipate or guard against.

*Kemp* v. *Squier, 1 Ves. 205,* says that it is discretionary in the court of chancery to set aside enrolled decrees on circumstances, and that, in that case, where there was an infant, who continued such until near the time of hearing, and was beyond seas, where the cause was neglected by the solicitor, and the merits of the case were not heard, the petitioner was entitled to have the enrollment set aside.

Day *v.* Allaire.

·This case cites *Robson* v. *Crowell*, before Lord King, where a person left money with his solicitor to fee counsel, and went beyond sea. The solicitor neglected to employ counsel, and the bill was dismissed, with costs. It was held a bare default, and the court opened the enrollment, on payment of costs, and gave the complainant leave to show merits and apply to rehear.

The court of chancery has discretionary power, even after enrollment, to open a regular decree obtained by default, for the purpose of giving the defendant an opportunity to make a defence on the merits, where he has been deprived of such defence, either by mistake or accident, or by the negligence of his solicitor. *Millspaugh* v. *McBride,* *7 Paige 509; Brinkerhoff* v. *Franklin, 6 C. E. Gr. 334; 2 Dan. Ch. Pr. 1030.*

The complaint here is, that the merits of the case were not presented to the court or discussed before the decree was pronounced, and that not by the laches or fault of the petitioner, but by the neglect of the solicitor employed by her, upon whom she had the right to rely. The first case cited above was that of one who had been an infant, and beyond sea, while he was suffering from the neglect of his solicitor. Here we have the case of a married woman, whose rights are just as carefully guarded by a court of equity, who has been undefended while her husband's creditor was charging fraud upon her, and attempting to take from her lands which, she alleges she is prepared to show, were purchased by her separate moneys. It is certainly within the discretionary power of the court to grant relief in such a case, if the defence shown be meritorious, and prompt application is made for its aid.

There has been no unreasonable delay in the petition in this case, and the only question that remains is, whether the petitioner has shown a meritorious defence. The facts are imperfectly set forth in the proofs that were taken for the defendants, which were not presented to the chancellor before the decree was made, but were offered with the peti-

tion for rehearing.  These proofs are, manifestly, incomplete.  They show, however, that Mrs. Day had property in England, independent of her husband; that it was received at different times by him, and, as she intended and supposed, invested for her, and in her name; that property in England, belonging to her, was sold about July, 1867, and remittances therefor made to her husband for her; and that, with these and other moneys from her father's estate, she claims that real estate was purchased, in her name, at West Farms, New York, in 1867 and in 1869, for which deeds were given to her.  If this be so, she had these lands prior to her husband's indebtedness to this complainant, and if the proceeds of sale of this real estate in New York were subsequently invested in lands in this state, in good faith, she has a title which cannot be disturbed by her husband's creditors.

The bill of complaint charges that, on May 24th, 1870, Stanley Day was indebted to the complainant, Isaac S. Allaire, in the sum of about $5,000, and that, on June 1st, 1871, he became indebted to him in the further sum of $4,000; and, on November 13th, 1871, he recovered a judgment, in the supreme court of this state, against Day, for $4,704.59, being the amount of his indebtedness second above named, with interest and costs.  Why no claim or judgment was had for the alleged prior debt of $5,000, does not appear.  The complainant shows, by proofs, that Day failed in January, 1871; that there were admissions made, by Mr. and Mrs. Day, that the property belonging to Mrs. Day in England was not sufficient to purchase the property at West Farms, and that these lands were sold in New York, and invested in New Jersey, to defeat the New York creditors of Stanley Day.  It is needless to comment on the uncertainty of such evidence, and its denial by Mrs. Day.  But Mr. Day was not called to meet these alleged admissions, nor to show the disposition made by him of his wife's property, although it appears that he received all of her moneys, and, as she says, invested them for her.  She

Day *v.* Allaire.

alone testifies as to what she heard and understood of such investment, and this is weighed as hearsay, and slight evidence in her favor.  She alleges, in her petition for rehearing, that she wished him and other witnesses to testify for her, but her solicitor said the case was plain in her favor, and refused to call them; that he then abandoned the suit, departed from the state, ceased to practice in our courts, and left her and her husband undefended.

It is not proper to decide the completeness of the defence, for this can only be done after all the evidence has been taken; and more especially is that the case where there is a charge of fraud, which is denied, as in the present action. It is manifest that there is a meritorious answer to this claim of the complainant, and that the defendants have not been heard on the testimony of their witnesses and the due presentation of their case in court, because of the gross neglect and abandonment of their solicitor, without any laches on their part.

This is not a case where the solicitor has erred in judgment merely in conducting the cause, nor is it one where cumulative evidence only has been excluded; but it is the refusal and neglect to present to the court most important testimony, both oral and written, which might have had a controlling weight in the mind of the chancellor, and the withholding of it was a surprise and fraud upon the rights of these defendants and the petitioner who now asks for relief.

In my judgment, the rule to show cause why the final decree should not be opened should be made absolute, the order reversed, and the case be remitted for further proofs and a hearing, on payment of the costs of entering the decree and the proceedings subsequent thereto, in the court below, and that the appellant recover costs on this appeal.

                    Decree unanimously reversed.