Allaire *v.* Day.

---

ISAAC S. ALLAIRE

*v.*

MARIA J. DAY and STANLEY DAY.

1. A final decree, made on hearing, in a case where the defendant's counsel failed to appear at the hearing, and also failed to lay before the court the evidence taken on behalf of the defendant, will not be

set aside, if it appears the same judgment must have been pronounced had the defendant's proofs been submitted and considered at the hearing.

2. A final decree, which is clearly right upon a full consideration of the whole case, will not be set aside merely to afford the defendant an opportunity to be heard on final hearing.

3. A deed which is fraudulent in fact as against creditors, may be avoided by subsequent as well as antecedent creditors.

On petition and proofs.

*Mr. Nelson Runyon,* for petitioner.

*Mr. A. Zabriskie,* for complainant.

THE VICE-CHANCELLOR.

This is an application to open a final decree on the ground of surprise and merits. A perfect case of surprise is shown. The counsel of the defendants did not appear at the hearing, nor did he have the defendants' proofs presented to the court. They had a right to believe that he would, without special instruction or direction, make a proper presentation of their defence. His failure to do so was a breach of duty that they were not bound to anticipate or guard against. His misconduct was a surprise, and if they have a meritorious defence, they are entitled to the benefit of it. The court is bound to hear them.

The case was brought to hearing regularly. The proofs on the part of the defendants had been fully taken, at least all that their counsel thought it advisable to take. They say, by their petition, that they had several other witnesses besides those examined, by whom they could have proved the matters alleged in their answer, but were advised by their counsel that they did not need further proofs. There is nothing to show that the advice was not proper under the circumstances. There is no charge of collusion between the complainant and the defendants' counsel. The only

Allaire *v.* Day.

charge they make against their counsel is that he suffered the case to be heard in his absence, and without having their proofs presented to the court. In the absence of fraud, shown by either direct proof or circumstances, the court cannot review his management. Nothing is shown which will justify even a suspicion that, in the production of the proofs, their counsel did not conduct their case with prudence and sagacity. It is true, he did not offer one of the defendants as a witness, but this fact furnishes no evidence of fraud or carelessness, or even a want of proper skill and judgment. It must be presumed that he knew his witness perfectly, and whether it was best to expose what he knew, or withhold it. It is also important to observe that no complaint is made on this ground in the petition, and it must therefore be understood that the defendants have no fault to find with the conduct of their case in that particular.

Do the proofs show a good defence? The defendants' proofs are now before the court. No further evidence has been taken. If, upon a full consideration of all the evidence, it now appears that, had the defendants' proof been before the court when the case was heard originally, the same judgment would have been pronounced, then it is obvious that no injustice has been done, and the decree should stand. The court should not go through the idle ceremony of opening the decree merely to give the defendants an opportunity to be heard, if it is now plain that, at the end of the delay that course will cause, precisely the same result must be reached.

The complainant is a judgment creditor of one of the defendants, and seeks, by this suit, to have his judgment charged upon certain lands held by the other, on the ground that the title was put in the other by the judgment debtor, for the purpose of defrauding his creditors. The defendants are husband and wife. The proofs produced by the complainant, standing unopposed, make a perfect case. They put in the mouths of both defendants admissions that the lands in question were conveyed to the wife to save

them from the husband's creditors, and show confessions, by the husband, that he fled from a neighboring state here to elude his creditors. They also show that the husband, after he became insolvent, fabricated an account on his books, in favor of his wife, by which she was represented to be his largest creditor. Looking simply at the complainant's proof, the decree now assailed is unquestionably right. The wife's title was a mere fraudulent cover. Is their force materially changed or impaired by the defendants' proofs? The wife claims to have received considerable sums of money from the estates of her father and mother, who were residents of England, and died there, and, further, that a part of this money was used by her husband in the purchase of the lands in controversy. These moneys were sent directly to the husband, and the wife thinks by drafts payable to him. She insists that they were her separate property and, as such, she had a right to make any use or disposition of them she thought proper. She admits that, as they were received, her husband took them and invested them in his business, with her consent, but she also says it was understood between them that, when he saw a good opportunity, he was to invest them for her. Such arrangements are not entitled to much favor in equity, for it seldom happens that the proper opportunity for the contemplated investment occurs, until after the husband has obtained all the credit his ostensible ownership of his wife's property can give him, and until his creditors are about to resort to legal means to compel him to pay his debts. He is usually permitted to hold himself out to the world as owner, for the purpose of contracting debts, but she generally steps in and attempts to assume the ownership just in time to rescue the property from her husband's creditors. Whether the parties actually intend deception or not, that is the natural effect of their conduct, and they should, on general principles, be held responsible for the natural consequences of their conduct.

The husband in this case made the bargain for the lands, raised the money and paid it, and did every other act that

was done in negotiating and completing the purchase. The wife was not present. He alone knows how the money was obtained, and whose it was. The wife had nothing whatever to do with the purchase, and is absolutely without the least personal knowledge respecting it. She has been examined as a witness, but he has not. She says her husband told her her money was used, and she refers to his books to confirm his statements, but admits that she knows nothing except what she has derived from her husband and his books. The law does not permit him to make evidence for his wife in this way. His books were not proved so as to be evidence in any case (*Cole* v. *Anderson*, 3 *Hal.* 68), and if they had been they were incompetent, as against the complainant, to show whose money was used. *Inslee* v. *Prall*, 1 *Dutch.* 665. All the wife's statements respecting whose money was used are without the slightest force as evidence; she simply tells what she was told, not what she knows herself. The husband's answer, on this point, is evidence (an answer under oath having been required by the bill), but its force is completely overcome by the admissions proved against him. Two witnesses have testified that he confessed he had falsely manufactured an account on his books in favor of his wife. Whether the account which he spoke of was the same to which his wife referred, as confirming his statements to her, does not appear, but the proof of his admission is uncontradicted, and, while that stands, it is impossible to believe his answer. The defendants' proofs leave the case made by the complainant's evidence practically untouched.

But it is insisted, even if it be found that the lands in question were paid for with the husband's money, the complainant is not in a position to assail the wife's title successfully, his judgment being founded on a debt incurred after she acquired title. The complainant became a creditor of the husband in 1869. That debt, he swears, remains unpaid, and in this he is uncontradicted. His judgment is founded on a debt contracted in 1871. The deeds to the wife were made in 1870. According to the complainant's proofs the

husband procured the lands to be conveyed to his wife after he became insolvent, with design to save his property from his creditors, This rendered the deeds fraudulent in fact, and voidable by either antecedent or subsequent creditors. *Cook* v. *Johnson*, 1 *Beas.* 54; *Belford* v. *Crane*, 1 *C. E. Gr.* 271; *Ridgeway* v. *Underwood*, 4 *Wash. C. C.* 137. There are authorities which hold that a subsequent creditor may impeach a voluntary conveyance simply on the ground that it was executed in fraud of antecedent creditors, but in that case he is bound to show that some of the antecedent debts still remain unpaid. *Hunt on Fraud. Conv.* 52; 1 *Am. Lead. Cas.* 41; *Spirett* v. *Willows*, 3 *DeG. J. & S.* 292; *Freeman* v. *Pope, L. R.* (9 *Eq.* 205); *S. C., L. R.* (5 *Ch. Ap.*) 536.

The main facts on which the complainant's right to relief rests are not disproved, or their force impaired in any material point by the defendants' proofs. Their defence is without merit; the order to show cause must therefore be discharged, with costs.