Cresse v. Security Land Investment Co.

RUHAMAH W. CRESSE, administratrix of the estate of Humphrey S. Cresse, deceased,

*v.*

THE SECURITY LAND INVESTMENT COMPANY et al.

Appearance and answer by a non-resident defendant, pursuant to the provisions of the twenty-first section of the Chancery act (*Rev. p. 106*), is not a matter of right, but rests on the discretion of the chancellor, to be exercised in view of all the circumstances of the case. The party applying for it must show merits and, where the circumstances demand, also surprise.

On petition of the Bethlehem Iron Company, a non-resident defendant, for leave to appear and plead, answer or demur to the complainant's bill and for a stay of proceedings under the execution issued upon final decree heretofore made herein until further order.

The suit is for the foreclosure of a mortgage on land part of which was claimed by one Ryon, who mortgaged a portion of that part, with other land owned by him, to the Bethlehem Iron Company. Ryon and the Bethlehem Iron Company were both made defendants in order, among other things, that their claims upon part of the lands mortgaged to the complainant's intestate might be adjudged to be without validity. The bill was filed in April, 1893, and promptly thereafter process of subpœna was issued against the defendants. The Bethlehem Iron Company was a corporation of Pennsylvania, having its principal office in Bethlehem, in that state, and not being found within this state, an order of publication was made against it pursuant to the provisions of the eighteenth section of the Chancery act, as amended in 1893, a notice of which, in the form prescribed by the fifty-eighth rule of this court, was published and mailed as required by law. *Rev. p. 106 § 18 ; P. L. of 1893 p. 199.* That notice was addressed to the Bethlehem Iron Company, and contained this paragraph :

Cresse v. Security Land Investment Co.

"And you, Bethlehem Iron Company, are made defendant because you claim to have an encumbrance upon said lands, or some part thereof, given to you by John T. Ryon, and in the said bill it is alleged that said John T. Ryon claims to own said lands through misapprehension and by mistake of facts, whereas in fact he never had any title to said lands or any part thereof; and it is alleged in said bill that the mortgage to said Bethlehem Iron Company is not, and never has been, an encumbrance on said land or any part thereof."

The Bethlehem Iron Company failed to appear or answer and a decree *pro confesso* was in due course, in July, 1893, taken against it. Ryon answered, asserting his title, and thereupon issue was joined, which, after having been litigated at considerable length and expense, was, in June, 1895, decided adversely to Ryon, and thereupon a final decree, dated in June, 1895, was entered against both Ryon and the Bethlehem Iron Company. From that decree Ryon appealed, but his appeal was dismissed, for want of prosecution, in June, 1896. Upon the record being remitted from the court of errors and appeals to the court of chancery, execution for the sale of the mortgaged premises was issued, and pending advertisement of sale under it, on the 11th of August, 1896, the Bethlehem Iron Company presented its present petition, upon the filing of which the sale advertised was ordered to be adjourned from week to week and the complainant was called upon to show cause why the prayer of the petition should not be granted.

*Mr. Samuel H. Grey,* for the Bethlehem Iron Company.

*Mr. Clement H. Sinnickson,* for the complainant.

THE CHANCELLOR.

The petition admits that the Bethlehem Iron Company was duly proceeded against as a non-resident defendant. It does not deny that it had timely knowledge of the notice published and mailed which made known to it the character of the suit and its concern in the result thereof.

It is true, in an affidavit annexed to the petition, the counsel of the defendant company says that he knew of another litigation

between the complainant and Ryon, to which the Bethlehem Iron Company was not a party, which he supposed was the only suit between those parties, but this lack of knowledge of the present suit upon the part of such counsel does not show that the notice referred to was not received, or that the managing officers of the said company did not know of this litigation and for some reason determine or fail to employ the affiant therein. Besides, there is a contradiction of the affidavit of such counsel in the affidavit of a former solicitor of the complainant, which is to the effect that he was told by the counsel of the Bethlehem Iron Company that that company would not answer in this cause or take any steps to protect its mortgage. It is not perceived that such a remark could have been directed to the other litigation between the complainant and Ryon, for to that litigation the Bethlehem Iron Company was not a party and therefore no question as to its answering or defending its mortgage therein could arise. If the notice to the Bethlehem Iron Company ever reached its counsel, it appears to be impossible, in view of its specific language quoted, that he should attribute it to litigation to which the Bethlehem Iron Company was not a party. The contradiction is, of course, due to some failure of memory or misapprehension which does not now appear. It is enough for present purposes that I cannot reconcile the statements of both affidavits, and that for that reason, if for no other, I should not base any judicial action upon the contradicted fact alleged in the affidavit of defendant's counsel. But this contradiction arises upon matter contained only in the affidavits, outside of the petition. The petition does not aver that the Bethlehem Iron Company did not have notice and know of this suit, and at the argument it was expressly disclaimed that its present application is intended to at all rest upon that ground.

Nor does the petition aver that the Bethlehem Iron Company has a meritorious defence against the complainant's claim which the final decree supports.

The application is put upon the facts that the Bethlehem Iron Company has an important interest in the suit; that it is a nonresident defendant; that it was not served with process within

this state and did not appear in the suit, and that it was never served with notice of the decrees against it, and its argument is that, even though it knew of the pendency of the suit and stood by inactively for two years until Ryon's defence was overruled and a decree was made against him and it, that 'now, in virtue of the Chancery act (*Rev. p. 107* § *21*), it being yet within three years from the date of the final decree, it has the right to appear and answer the complainant's bill.

The section of the Chancery act referred to, stripped of verbiage and matter not pertinent to this inquiry, provides that where a decree shall be made against an absent defendant the chancellor "*may*," before issuing process to compel performance of the decree, "*if he deems it equitable so to do*," require the complainant to give a bond, with such security and in such sum as he may direct, conditioned for restitution of property which may be unjustly taken from the absent defendant, and that if such security shall not be given, execution for the performance of the decree shall not issue, but the estate and effects of the absent defendant may be sequestered and remain under control of the chancellor; and if the absent defendant shall, within six months after notice in writing of the decree is given to him, or within three years after the decree, if no such notice be given, "petition the chancellor touching the matter of such decree, and pay or secure to be paid such costs as the chancellor shall think reasonable to order and direct," he "*may be permitted* to appear and answer the complainant's bill, and thereupon such proceedings shall be had as if such absent defendant had appeared in due season and no decree had been made;" or he may, within the times aforesaid, file his bill to recover back the excess over the complainant's rightful recovery; but if he shall not present his petition or file his bill within the times aforesaid, the decree shall be deemed and adjudged to be confirmed as of the time of making it.

The scheme of this section of the statute obviously is to declare and, to some extent, regulate and limit the power of the chancellor not only to withhold execution in the enforcement of the decree against an absent defendant, but also to let the absent

defendant answer, leaving the exercise of the power, subject to the limitations, within the discretion of the chancellor. The section treats of precaution that may be taken against injury from possible error in an *ex parte* decree. It has nothing to do with the process by which jurisdiction of the absent defendant is had. It is to be read in the light of the remainder of the enactment of which it is a part, and the objects and purposes thereof, and particularly in the light of the nineteenth section, amended in 1893 (*P. L. of 1893 p. 199*), which first provides that an absent defendant, who shall be served with notice of the suit as in the eighteenth section of the statute directed, shall be bound by the decree as if served with process within the state, and then if such defendant shall make oath that he did not receive the notice or have knowledge of it within ten days after the time within which it was directed to be served, or in cases where actual service of the notice is affirmed by the complainant shall show that it was not made, " the chancellor *may, in his discretion,* before executing the decree," proceed to take security in the manner provided in the twenty-first section. In this section the legislature indicates its intention to be that the twenty-first section is not designed to relieve an absent defendant who has received notice of the suit given as the eighteenth section of the statute prescribes, but that the power described and declared in the twenty-first section to require security against error in the decree, or in default of its being given to withhold execution for a limited time, is to be available to the chancellor in case notice shall not have been received. But it does not require the chancellor to use that power. Its provision is that he "may" do so, and to emphasize that there is no mandatory requirement the words "in his discretion" are added. So in the twenty-first section the power to require security is submitted for use by the chancellor whenever he deems it equitable to use it, the language being "*may if he deems it equitable so to do.*" And later, when it contemplates that there may be appearance and answer by the absent defendant, it does not give an absolute right to the defendant to appear and answer, but authorizes his application to the chancellor, who *may permit* appearance and answer, very

properly leaving the affirmative or negative action upon the application to rest in a proper exercise of judicial discretion.

The seventy-third section of the Chancery act is of the same general character as the twenty-first section. It has for its object the protection of absent defendants from error in mortgage foreclosure cases. Its provision is, that after decree and before sale of the mortgaged premises under execution, an absent defendant may enter his appearance and apply to the court for a writ of *supersedeas* to stay proceedings on the execution.

In *Horner* v. *Corning, 1 Stew. Eq. 254,* the court of errors and appeals held that this section of the statute is not mandatory as to the issuance of the writ of *supersedeas,* but is declaratory of a power which was inherent in the court when the section was enacted. " The act," said Mr. Justice Dalrimple, in writing the opinion of the court, " simply declares it lawful for the court, under the circumstances named, to issue the *supersedeas.* Whether it shall or not issue depends not on the will of the party, but on the discretion of the court, to be exercised in view of all the circumstances of the case. I think a party who invokes the aid of the court under this statute should show, at least, surprise and merits."

If authority be needed to assure us that the proper interpretation of the twenty-first section is, as its language plainly indicates, that all indulgence to the absent defendant is left within the discretion of the chancellor, the case cited furnishes it.

I think that in this case it was incumbent upon the Bethlehem Iron Company to unequivocally allege and establish that it was never served with notice of the suit in the manner prescribed by the eighteenth section of the Chancery act, so that it actually received the notice of the suit, or to allege surprise in some other form which will justly call for this court's interference in its behalf, and also that the defence it proposes to interpose is possessed of merit. The propriety of requiring the defendant to show surprise in this case is emphasized by the fact that for months the complainant and Ryon were engaged in trying the very issues upon which the claim of the Bethlehem Iron Company rests. It should have clearly appeared that during such litigation the

defendant did not willfully stand by, watching the proceeding in hope that in the success of Ryon its mortgage would be protected, and did not negligently fail to defend. The application, in substance, asks the repetition of an expensive litigation, which should not be permitted except upon the presentation of a clear and strong case of surprise and merits.

In the case of *Consolidated Electric Storage Co.* v. *Atlantic Trust Co., 5 Dick. Ch. Rep. 93,* question as to the right of a non-resident defendant, under the twenty-first section of the Chancery act, to appear and answer, regardless of whether he has or has not a ground of defence, was presented to Vice-Chancellor Van Fleet but was not decided, because, there, so strong a meritorious defence was shown against the holding of a decree made upon *ex parte* proofs, and at trifling expense to the complainant, that the vice-chancellor felt constrained to permit it to be set up, even though it appeared that the defendant had notice of the suit and opportunity to defend it. I apprehend, however, that he would have attached some importance to the failure to defend after notice if, during the delay, the complainant had been put to a long and costly litigation with other parties upon the very issues the proposed defence must raise.

A general expression of the vice-chancellor at the end of his opinion indicates that he was at least inclined to the opinion that importance was to be attached to the words of the twenty-first section, that the absent defendant could petition the chancellor "touching the matter of such decree," as restricting that which was to be considered by the chancellor upon the application to the substance adjudicated by the decree, excluding the question as to surprise. I take a broader view of this language. I think that by use of the words "matter of such decree," the legislative intent was to comprehend everything that might justly be considered to sustain or defeat the decree.

I think that the case presented by the petition is insufficient to justify my granting the prayer of the petition, and therefore, no desire to amend having been expressed, I will deny the application and discharge the restraint upon the sale.