JOSIAH WHITE et al.

*v.*

ELLA ETTA SMITH et al.

[Decided March 7th, 1907.]

1. An enrolled decree may be opened on petition to permit the defendant to make a defence on the merits.

2. Where a decree was taken against a party without a trial on the merits as to a particular proposition in the case, it is within the discretion of the chancellor to open the decree and permit a defence on the merits of such question.

3. Evidence *held* to require a finding that an alleged lost deed executed by a son to his mother was not for the benefit of petitioners, and that they were therefore not entitled to open an enrolled partition decree for the purpose of claiming title to a portion of the property under such deed.

This is a petition by the defendants Ella Etta Smith and her husband, Rufus, praying that the enrolled decree in this suit may be opened, and they may be let in for further pleading. I phrase the matter in this way because that which they wish to set up is not, by way of defence, against the complainants, but relates to a controversy with co-defendants.

The decree is the ordinary decree in partition in which it is, *inter alia,* determined that the complainant owned one-third of the land in question, the defendant Ella Etta Smith one-third, and the defendants George H. Weaver and Josephine Maude Lake each one-sixth.

The petitioners bring before the court in this proceeding the proceedings in another suit pending in this court in which the defendants Lake are complainants and the petitioners, among others, are defendants.

From the pleadings, proofs and proceedings the following facts appear: Samuel W. Weaver was the owner, at the time of his death, of the land involved in the suit. He died in 1872, testate, his wife being the executrix of his will. He left a widow,

Josephine T. Weaver, and three children, Theodore S., Alphonso and Ella Etta. Alphonso died in April, 1888. After his death the land in question belonged equally, one-third each to the widow, Josephine T., Theodore S. and Ella Etta. Josephine T., on the 13th of September, 1897, leased the whole property for six years to Josiah White and another, with an option to buy. They exercised the option within time, and upon her refusing to convey they, on August 3d, 1903, brought a suit for specific performance, in which she set up that she only owned a third of the land in question, and that Ella Etta owned a third and Josephine Maude (Weaver) Lake and George H. Weaver, the children of Theodore S. Weaver, then deceased, owned the other third.

The court, in the specific performance case, decreed that Josephine T. Weaver should convey her interest, namely, one-third, to the complainants, and the other two-thirds were abated from the contract price, she receiving the one-third of the contract price for the one-third she conveyed. The decree in that suit was made on the 26th of May, 1904, was appealed and finally decided in favor of the Whites in March, 1905.

On May 26th, 1904, Josiah T. White & Son brought this suit for partition. They made Ella Etta (Weaver) Smith (she having intermarried with one Rufus Smith), Josephine Maude (Weaver) Lake (she having intermarried with one Lake), and their respective husbands, and George H. Weaver, defendants. The complainants in this bill alleged that they were the owners of an undivided one-third, and that Ella Etta Smith and her husband were the owners of an undivided one-third, and that Josephine Maude Lake and her husband were the owners of an undivided one-sixth, and George H. Weaver was the owner of an undivided one-sixth. To this bill Ella Etta Smith and her husband filed an answer admitting the allegations as to the ownership of the land, and a decree was made on the 18th of May, 1906, finding the ownership as aforesaid, and ordering a sale of the property. The property was sold in July of 1906, and bought in by Ella Etta Smith for $15,535, and before the proceeds of the sale were paid over to the defendants Lake and Weaver notice was given by the solicitor of the Smiths to the

solicitor of Lake and Weaver of an application to have the moneys due the latter defendants held in court to await the determination of the suit of such latter defendants against the Smiths and others. An order was made, by consent of the solicitors, so providing.

By their petition in this suit the Smiths set out that Theodore S. Weaver, on February 28th, 1889, gave a quit-claim deed unto Josephine T. Weaver for all his right, title and interest in the premises in question, and that

"such conveyance was made to said Josephine T. Weaver in order that she might, in turn, convey such interest unto your petitioner Ella Etta Smith in part payment of the moneys which the said Josephine T. Weaver, as executrix of the estate of Samuel W. Weaver, deceased, should have paid unto your petitioner Ella Etta Smith, but which in reality she had paid unto the said Theodore S. Weaver."

They then set out that this deed was lost in or about August, 1903, and that they were advised that by reason of the loss the interest of the said Theodore S. Weaver reverted to his heirs-at-law, namely, the said George H. Weaver and Josephine Maude Weaver Lake. They then set out that they did not know, nor were they advised that it was possible to re-establish such lost deed until the latter part of the month of November, 1905, and that thereupon they caused proceedings to be instituted on the 11th day of December, 1905, in the supreme court of this state for the purpose of establishing the lost deed in accordance with the statute. That on the 26th of December, 1905, George H. Weaver and Josephine Maude Weaver Lake, together with the husband of the latter, instituted a suit in this court in which they set out the commencement of the proceedings by Josephine T. Weaver in the supreme court, asked that such proceedings be perpetually restrained, and further prayed that by the decree of this court the defendants Josephine T. Weaver, Rufus Smith, Ella Etta Smith and Laura Coston might be forever restrained from in anywise setting up any claim to the one-third interest in the lands and premises formerly owned by Theodore S. Weaver.

The petition alleges that so much of the decree in this suit is erroneous as adjudges that George H. Weaver and Josephine Maude Weaver Lake are each seized and entitled to an undi-

vided one-sixth of the land, and further charges that they are not entitled to any interest in said land.

The prayer of the petition is that the final decree be opened and they be granted a rehearing, or else that said decree be permitted to stand open until a final decree shall have been made in the case of *Lake* v. *Weaver* above mentioned.

*Messrs. Melosh & Morten,* for the petitioners.

*Mr. John J. Crandall,* for the respondents.

GARRISON, V. C.

While this petition may not be artistically drawn, the purpose of the petitioners is quite obvious. Having pleaded by their answer in this suit that the children of Theodore S. were entitled to a one-third interest, and the decree in the suit, in which they were all parties, having adjudged that fact, the petitioners desire now to have that decree opened so as not to be concluded thereby.

The first question to be considered is whether it is proper practice to seek by petition to open an enrolled decree for the purpose of giving the defendant an opportunity to make a defence on the merits. I conclude that under the authorities it is proper practice, and I endorse and agree with my brother Stevenson, who said: "In my opinion, the application by petition in the cause to vacate the enrollment and open the decree is to be encouraged, if not exclusively prescribed in all cases where such procedure will accomplish justice." *Kearns* v. *Kearns, 70 N. J. Eq. (4 Robb.) 483.*

The next matter for consideration is under what circumstances the prayer of such a petition will be granted.

In *Brinkerhoff* v. *Franklin, 21 N. J. Eq. (6 C. E. Gr.) 334 Chancellor Zabriskie, 1871),* it was said (at *p. 336*): "It has long been settled that an enrollment will be vacated and a decree opened when the decree has been made unjustly against a right or interest that has not been heard or protected, when this has been done without laches or fault of the party who applies." Citing cases.

In *Embury* v. *Bergamini, 24 N. J. Eq. (9 C. E. Gr.) 227*

(*Chancellor Runyon, 1873*), speaking with respect to a default decree after an enrollment, the court said that it would be opened "for the purpose of giving the defendant an opportunity to make a defence, where such defence is meritorious, and he has not been heard in relation thereto, either through mistake, accident or surprise."

In *Day* v. *Allaire, 30 N. J. Eq. (3 Stew.) 231,* the court of errors and appeals said: "The court of chancery has discretionary power, even after enrollment, to open a regular decree obtained by default, for the purpose of giving the defendant an opportunity to make a defence on the merits, where he has been deprived of such defence, either by mistake or accident, or by the negligence of his solicitor."

In this last-cited case an answer was interposed by the defendant and testimony taken, but her solicitor abandoned the case without her knowledge, omitting and refusing to take testimony of several material witnesses, and did not present the evidence taken or argue the case before the chancellor; in that sense the decree was taken by default.

In the case at bar an answer was interposed but no question of merits concerning the subject-matter contained in this petition was raised by the answer. In that sense it may be said that this decree was taken by default on that point.

It is alleged in the petition that the reason for not setting up the facts which were perfectly well known to the defendants concerning this deed was because their solicitor advised them that when the deed was lost all rights of the grantee thereunder were also lost. This, of course, is not the law, since equity has jurisdiction to establish a lost deed. *Kent* v. *Church of St. Michael, 136 N. Y. 10; 19 Am. & Eng. Encycl. L. (2d ed.) 555.* And the remedy by statute is concurrent or cumulative. *19 Am. & Eng. Encycl. L. 556.*

In *Warner* v. *Warner, 31 N. J. Eq. (4 Stew.) 549 (Vice-Chancellor Van Fleet, 1879),* and in *Perrine* v. *White, 36 N. J. Eq. (9 Stew.) 1 (Chancellor Runyon, 1882), (affirmed, 36 N. J. Eq. (9 Stew.) 632),* it was held that errors of judgment or mistakes of counsel are not valid grounds for granting a rehearing, and cases in other jurisdictions holding that the errors or

negligence of counsel must be attributed to the client are collected in *16 Am. & Eng. Encycl. L. (2d ed.) 392.*

It will be seen that the precedents and authorities do not lay down any hard and fast rule, and I think that this is by design and not from indecision. I think it is a matter left to the discretion of the court in each case, so that when merits and hardship are shown an inflexible rule will not prevent relief.

Upon the question of merits in the case at bar it is necessary to rehearse certain facts before a decision can be stated.

There is no doubt from the proofs that Theodore S. Weaver gave to his mother, Josephine T. Weaver, a quit-claim deed for his one-third interest in the property owned by his father at the time of his death, and that such deed was dated on or about the 28th day of February, 1889. There is no doubt that the defendant Ella Etta Smith knew of this deed practically from the day of its delivery. This deed was in existence and was exhibited to the solicitor who represented Mrs. Josephine T. Weaver in the specific performance case begun by the present complainants against her about August 3d, 1903. It was lost shortly after that time.

Josephine T. Weaver, it will be recalled, was the executrix of her husband, and she, her son Theodore and her daughter, Ella Etta, were each entitled to one-third of whatever he left. It appears from her testimony that in February of 1889 she and her son Theodore went over their mutual accounts and discovered that he had drawn a sum of money which they treated as having come to him from her as executrix. It is quite plain that since there was no settlement of the estate in the probate court, and no ascertainment of the indebtedness of the executrix to the legatees, it cannot be definitely ascertained what, if anything, the executrix owed the legatees. I think, however, that it appears undisputed in the case that the mother had given Theodore moneys, and that, as between themselves, they assumed that they were on account of his interest as legatee under his father's will, and that such advances by her to him were in excess of what they then figured would be the amount eventually owing to him by her as executrix. The only living person who can give any evidence concerning the circumstances of the making and

delivery of this deed is Mrs. Josephine T. Weaver, and her testimony thereon is as follows. Speaking in respect to her son Theodore, she said:

"After the settlement with him and myself he discovered and I discovered (to my astonishment, I will say) that he had overdrawn considerably what belonged to him, and he said to me, 'I suppose Ella and Rufus will kick about that, that you have allowed me to overdraw so far;' I said—well, I don't remember just the answer I made to it, but he says, 'All right, mother; I will make it all right; there shall be no hard feeling in our family; I will give you a quit claim deed to my interest in the old farm to make up to Ella what I have overdrawn on her share.'"

In other words, he gave to his mother, from whom he had procured what they determined was an excess of money over what was coming to him, this deed in payment or satisfaction of what he owed her, or perhaps as security therefor. It entirely lay with her as to what she should do with the property thus conveyed to her. She could either accept and retain it, or could refrain from accepting it if she so desired. She could undoubtedly have conveyed it to Ella Etta in satisfaction of what she, as executrix, owed her, or could have declared a trust in her behalf, or could have sold it, and either kept the proceeds or paid them or some part of them to Ella Etta on account of her share; or she could have destroyed the deed, and thus divested herself voluntarily and intentionally of the interest thereby conveyed to her; or could voluntarily and intentionally have refrained from recording it for the same purpose.

No express trust in favor of Ella Etta was created by the deed or by the conduct of the mother and Theodore. No implied trust in favor of Ella Etta arose out of the circumstances. Theodore's dealings were with his mother, who was acting either individually or as executrix. What he owed he owed to her in one or the other of these capacities, and what he gave he gave to her. If she chose not to accept the benefit thereof no one else has any legal right to complain.

What Mrs. Weaver did after the deed was delivered to her is therefore of the utmost importance, and what the defendant Ella Etta did, in view of her knowledge and her present claim, is also important.

Mrs. Weaver received this deed in 1889, and does not claim to have lost it until 1903. During these fourteen years she did not record the deed, and never did anything to show that she intended to exercise any rights vested in her by the deed. While, standing alone, this failure to record might not be determinative, it certainly is some evidence of her attitude toward the matter. If she intended to accept the property from her son it is curious that she did not record the deed. If it was intended that she should convey the property to Ella Etta, as is now contended, there is no scintilla of proof as to why this was not done.

Ella Etta knew all the time of the deed, and if it be true that what she now says was the fact, she knew all the time that it was intended that this property was merely conveyed to her mother as a conduit through whom it was to reach her. Why she did not see to it that her mother conveyed to her is not in any way explained, nor is there any suggestion of a reason. The deed was still in existence and in the possession of Mrs. Weaver during the time in 1903 when the Whites, the complainants in this suit, began their action for specific performance against Mrs. Weaver. As before explained, she had agreed to convey the whole property to them for something over $8,000. In her answer she pleaded that she only owned one-third of the property and the children of Theodore owned another third and her daughter, Ella Etta Smith, a third. Here is confirmatory and determinative evidence that she did not intend to take the benefit of the conveyance of her son's interest to her, and also evidence entirely at variance with the present contention of these petitioners.

Later in the year 1903 her daughter, Ella Etta, procures from her mother a bond for a sum alleged to represent the amount due by her mother as executrix to her, and subsequently judgment was entered on the bond and an execution issued and a sale had thereunder, and the property, namely, the real estate in question in this suit, which was levied on and sold, was conveyed through an intermediary to Ella Etta. The giving of this bond and warrant is entirely consistent with the idea that Mrs. Weaver owed her daughter, as executrix, the sum of money represented thereby, but is entirely inconsistent with the idea that the prop-

erty conveyed to the mother by Theodore belonged to Ella Etta, and really was Ella Etta's share of the personal property previously absorbed by Theodore.

It is inconceivable upon any rational theory of conduct that at a time when the mother held title to Theodore's third for the benefit of Ella Etta, and was merely a dry trustee with no' duty to perform saving to convey to Ella Etta that she should not only not convey, but should confess judgment for the sum which, as executrix, she admitted she owed.

The taking of this bond and warrant by the daughter casts a strong light upon her attitude toward the subject-matter of inquiry, and what has just been said need not be repeated. If her present contention is sound,· and she was entitled to a conveyance from her mother, she has not even suggested a reason why she did not proceed to obtain the same rather than to recognize that the matter was an open one and proceed against her mother by bond, warrant, judgment and execution.

Furthermore, we have, as in the case of the mother, conclusive proof of the state of mind of the petitioner in her answer in the suit at bar. Therein, as previously recited, although she had full knowledge of all the facts, she admits the ownership by the children of Theodore of one-third of the land in question. Her only explanation of this is that she was advised by her then counsel that when the deed was lost all rights thereunder were lost.

That a client is bound by the errors or mistakes of her attorney or solicitor is sustained by abundant authority heretofore cited, and it is also to be remarked that the absence of this solicitor as a witness in this suit is very suspicious and reflects seriously upon the good faith of the petitioners herein. This counsel is in active practice in this state and is easily reached by subpœna to testify. It is almost unbelievable that he could have given these petitioners the advice which they say he did. In view of the principles of equity which protect those who have suffered the loss of a deed before record, and in view of the express provisions by statute, it is very difficult to believe that a lawyer in active practice and of good standing at the bar should have advised clients that when a deed is lost all rights under it are lost, and yet this is the bald, unqualified statement that they

45

contend was made to them. It would require strong and con-
vincing proof that the fact is as they assert, and no reason is
given to the court why this attorney was not subpœnaed as a
witness to furnish the best evidence of the fact.

It seems much more likely to me that the counsel in question
reached the conclusion which I have reached, namely, that the
deed to Mrs Weaver gave her a right which she voluntarily chose
to abandon, and by her conduct had shown that she had aban-
doned, and it was, therefore, no concern of these petitioners,
because they had no rights with respect thereto.

However this may be, I am clear that parties who have con-
ducted themselves with respect to a subject-matter as these peti-
tioners have should not be permitted at this time, in view of the
results which would ensue, to change and alter their previous
position in the way which they now desire to do.

In passing, I think it proper to remark that a curious effect
results to the complainants by permitting the defendants to set
up this matter in this suit now. The complainants had the con-
tract with Mrs. Weaver for the whole property. In the specific
performance case she answered that she only had a third. The
court therefore only decreed a third to be conveyed. The defend-
ants now set up that at that time she had two-thirds. The proofs
show that the property is at least twice as valuable now as it was
at the time the contract was made between Mrs. Weaver and the
complainants; the result to the Whites would be that by reason
of Mrs. Weaver's answer in their suit they were only able to
secure a conveyance of one-third of the property from her, al-
though at that time she had title to two-thirds, and could and
would have been compelled to have conveyed two-thirds to them
if she had truly represented the facts in her answer.

And this obvious illustration of the effect of permitting par-
ties to untruly answer without being bound by their answers, and
subsequently, when it serves their purposes, to suffer them to set
up statements directly opposed to statements made by them in
previous pleadings, is, I think, a cogent and striking reason
against the court's allowing such procedure.

If the defendants claim that by reason of the sale under the
execution issued upon the judgment of Ella Etta against her

mother and the transfer by the purchaser at that sale of the title, they obtained the legal title which Mrs. Weaver had theretofore owned, and that therefore they owned the legal title at the time of this suit, I think they have shown no reason for not setting that up. They do not suggest that their attorney or solicitor advised them that, owning a legal title, they could not plead it.

And what has just been said applies equally to whatever rights they acquired by a deed dated in April of 1905 from Mrs. Weaver to Ella Etta Smith.

Previous, however, to making this deed, Mrs. Weaver had quit-claimed to a purchaser from Josephine Lake whatever interest Mrs. Weaver had in the lands contracted to be sold by Josephine Lake to such purchaser, one Martin Keane. And here again is a strong reason against permitting these petitioners to now alter their attitude concerning the title and ownership of this property. After Mrs. Weaver, the grantee in the deed from Theodore, admits upon the record by her answer that the children of Theodore have title, and Mrs. Smith and her husband, with full knowledge of the deed, likewise, in an answer, concedes the title is in Theodore's children, and the decree in this suit likewise so adjudges, and one of the children contracts to sell her share to a stranger, and Mrs. Weaver quit-claims to such stranger, then these petitioners desire to completely change their own attitude toward this title and all that their answer and that of their mother have admitted, and the decrees of this court based thereon have adjudged, and open up all the controversies which this course would give rise to.

My conclusion is that these petitioners have not shown themselves entitled to open this decree for the purpose of setting up rights under the deed in question. I think to permit them to do so would be to put a premium not only upon carelessness and laches, but upon false pleading and the lack of honesty and candor. The only explanation which squares itself with all of the conduct of the parties is that Mrs. Weaver, for reasons satisfactory to herself, determined not to take the benefit of this conveyance. She thus conducted herself from the beginning. I find that it entirely lay with her whether she would accept this property as her own or not. I find from her conduct that she, at

least so far as these defendants are concerned, so conducted herself that they have no interests because of the conveyance of Theodore to her.

The prayer of the petition will be denied.