WILLIAM C. JONES, petitioner-appellant,

*v.*

ANNA P. READ-JONES, defendant-respondent.

[Submitted November 23d, 1914. Decided June 14th, 1915.]

Where husband and wife have been living apart by mutual consent, there must be satisfactory proof that the consent thereto was withdrawn and the marital duty was demanded, to turn such separate living into willful desertion.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, whose opinions are reported in *89 Atl. Rep. 29,* and *83 N. J. Eq. 571.*

*Messrs. Bourgeois & Coulomb* and *Mr. John W. Wescott,* attorney-general, for the petitioner-appellant.

*Mr. Floyd H. Bradley,* for the defendant-respondent.

The opinion of the court was delivered by

PARKER, J.

As will appear by reference to the two opinions in the court of chancery, the husband's petition for divorce was at first unanswered, and the hearing was brought on *ex parte* before a special master. Evidence was taken in the usual way, and in due course the master reported in favor of granting a divorce, decree *nisi* was entered on the report, January 17th, 1913; and final decree followed on July 18th of the same year. In November the defendant applied by petition for a rehearing, claiming in substance that the decree had been procured by surprise and fraud. In considering the question of granting a rehearing the cause was retried in all its aspects in open court, and the vice-chancellor held that the decree should be opened; and treating it as opened

and the cause as submitted on a rehearing, he advised a decree dismissing the petition. In concluding his opinion he reserved to the petitioner the right to present any further proofs desired, and apparently no offer of further proof was made.

The point is made on this appeal that the procedure by petition to open the decree was improper, and that there should have been a bill of review. If this is cognizable under a general ground of appeal "that the chancellor should have adjudged that the petition to open said final decree should have been dismissed with costs," it will be sufficient to say that the matter was fully considered by the vice-chancellor, and that where the merits of the case have been fully presented by the pleadings and evidence, niceties of practice may well give way to the substantial merits. There is adequate authority for the proposition that when fraud and surprise are relied on to open an apparent default, a decree may be opened on petition even after enrollment. *White* v. *Smith*, *72 N. J. Eq. 697, 701*, and cases cited; *Day* v. *Allaire*, *31 N. J. Eq. 303*, reversing *30 N. J. Eq. 231*. We are not disposed to disturb the decree on this ground. The consideration of the whole case by the court below in connection with the petition to open the decree is not seriously questioned here.

This brings us to the merits; and on this phase of the case, upon a careful consideration of all the evidence, we conclude that the court of chancery did not abuse its discretion in opening the decree, and that the second decree, dismissing the petition for divorce, should be affirmed. Reference may be made to the two opinions filed in the court below (*89 Atl. Rep. 29; 83 N. J. Eq. 571*) with respect to the chronology and sequence of events in the case; but we are very far from subscribing to the findings of the court below as to the conduct or motives of the parties and especially of the petitioner. The vice-chancellor seems to have become convinced that the petitioner had attempted to impose upon the court, and secure a divorce by deceiving his wife into suffering a default, and by suppressing material facts on the *ex parte* hearing, and this conviction apparently colored his whole view of the case.

With the finding that the defendant was "deprived of her day in court by the deceitful and fraudulent machinations of the

petitioner" we disagree *in toto.* The process was served on defendant in the regular way by a sheriff's officer, and within this state. And when petitioner was consulted on the matter by his son and daughter, after the citation was served, an important question, if not the important one, was whether Mrs. Jones must "go to Trenton"—a question constantly asked by all defendants unused to chancery litigation, and suggested by the language of the process. If petitioner used the language attributed to him by the son and daughter, it may be said that that language was sufficiently ambiguous, without any fraudulent intent on his part, to permit of the construction that he would not press the suit, though the son himself says that his father did not say the matter would not be pushed any further. The exercise of the court's discretion in opening the decree is supported by us on the ground that it was not unreasonable for defendant to conclude, from what was said to her, that the suit was not to be pushed; but we think there is no substantial ground for holding that petitioner intended or expected that such a conclusion should or would be drawn.

The petitioner was further found to have attempted an imposition on the court by the suppression and moulding of evidence.

The subject of this finding is a reputable member of the bar of this state, a counselor-at-law. We are not aware that anything unprofessional has heretofore been charged against him. He was represented in the court below and in this court by counsel of high standing, long experience, and extensive practice. It must be assumed that he sought and was guided by their advice. While we agree that, for reasons to be shortly stated, he was not entitled to a divorce, we do not agree that there was any attempt or purpose to deceive or impose upon the court.

The ground of divorce invoked was willful, continuous and obstinate desertion for two years and over. That the parties had not lived together for about six years is conceded. The question then was whether such separation resulted from the act of the wife and against the will of the husband. An examination of the marital life of the parties as disclosed on the evidence, has been a most painful task. Both were people of position and

standing in Camden. Plainly they were mismated; and when, after some ten years of more or less unhappy married life, full of mutual misunderstanding and recrimination, she left him and went to live at Swarthmore, there ensued a period of enforced celibacy that usually leads to disaster. He came to see his children, but he and his wife avoided each other. Each claims that the other abhorred a meeting. We think each honestly believed this but was deceived. Jones thought his wife did not wish to see him and was too proud to force his presence on her undesired; so he sent her word of his intended visits. She plainly took this as meaning that he did not wish to see her, and with similar pride kept out of his way even though she may have yearned to see him. And so matters went from bad to worse, with no opportunity for explanation until the situation became so intolerable that Jones resolved to end it if he could. Certainly, if he had, or honestly thought he had, any reasonable ground to end it, he was justified in attempting it. And no one should blame him for construing a home found gutted of all its contents except the marriage certificate staring from a blank wall, as notice that his wife had left him and did not wish to see him again as a husband, and so, quite reasonably, as it seems to us, he and his counsel coupled this occurrence of September with the departure to Atlantic City in June and deduced the conclusion that she had intended her departure for the summer as the termination of marital relations. No wonder that thereafter he did nothing that could be interpreted as forcing his society upon her.

He is blamed by the court below for not presenting his whole case, or more of it, before the special master. But his motive was perfectly obvious, viz., to avoid unnecessary scandal by exploiting the family skeleton on the chancery records. It is safe to say that under ordinary circumstances, if several grounds of divorce are available, the least scandalous will be chosen; and where parties of respectability and standing try to avoid unnecessary airing of their soiled linen in court, their action is not only not necessarily blameworthy, but often commendable. Usually the sex relation is at the bottom of the divorce case, in some form, and there is an element of it here, in the accusation

by each party that the other did not wish children. Manifestly, it were better to leave that phase out of the *ex parte* evidence as bearing only remotely on the question of desertion, if at all; and petitioner purposely omitted it. Similar comments might be made on other phases of the case. In connection with this matter, the remark in the opinion that the wife left her husband's bed because of an indignity, is most unjust, though doubtless unintentionally so, in the inferences that might be drawn from it. The "indignity" consisted simply in the alleged fact that once when the parties were in bed together, she touched him accidentally and he shrank away; an action which she at once interpreted as meaning that neither then nor at any other time did he desire her to be in the same bed with him.

Speaking generally, the conduct of the case before the special master was consistent with this theory, which we believe to be the true one: that Jones believed with good ground that his wife had deserted him and did not intend to come back; that a divorce was the best way to end their difficulties; that she would welcome such action; and that the presentation of a case of desertion in its simplest form and avoiding painful detail would be preferred by her as it was by him. In this he was not unreasonably confirmed by her non-appearance in the suit. And, as long as a case is presented on the evidence that fairly meets the requirements of the statute, there is no reason why any court should, in an *ex parte* trial, require the disclosure of painful personal detail that would be of value only as corroborative of the evidence presented.

We have gone into the matter at some length because we are not willing to leave a reputable member of the bar, represented by reputable and experienced counsel, adjudged guilty of securing a default by fraud and of having imposed thereafter on the court by suppressing material facts.

The decree, however, must be affirmed, and for this reason: The intent to desert in June is not satisfactorily shown. The removal to Swarthmore to live was not objected to by petitioner; at least it was not made an issue. His assistance in making the arrangements there plainly implied consent. So, that the separation at that point was voluntary. And at no time thereafter

was the alternative squarely placed before the wife of returning to his house or refusing to do so. So, it cannot be said that the period of willful and obstinate desertion ever commenced. The case of *Currier* v. *Currier, 68 N. J. Eq. 7, 797*, is one of a line of decisions that lay down the rule here applicable.

The decree of the court of chancery is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, VREDEN-BURGH, WHITE, HEPPENHEIMER—11.

*For reversal*—WILLIAMS—1.