A petition is filed to vacate a final decree, made on the 6th day of July, 1922, and filed on the 7th day of July, 1922, in a certain cause wherein Karl Schaffer was complainant and Warren W. Hurd (the petitioner) and others were defendants. *Page 144 
The bill was filed to foreclose the equity of redemption of the owner, mortgagees and any others interested in the title to a number of tracts of land in Atlantic county, which the complainants had purchased at tax sales held by the cities of Atlantic City and Ventnor City.
The defendant Hurd (present petitioner) was made a party defendant because he was the owner of mortgages upon some of the tracts so purchased, aggregating about $500,000.
The cause proceeded in due form to the confirmation of the master's report and an order was made on the 13th day of June, 1922, wherein it was ordered and decreed that upon the defendants or any of them paying to the complainant the amount found due to the said complainant, together with his taxed costs at the office of the master (therein named), on the 29th day of June, 1922, then the complainant was to deliver up possession of said premises to the said defendant, or any of them (so making payment), and cancel and discharge the said certificates of tax sale of record.
Upon the master filing a report that no person appeared at the time and place or at any other time, and that none of the defendants paid or offered to pay the sum of money or any part thereof, the said final decree, adjudging the said defendants and each of them to be and stand absolutely debarred and foreclosed of and from all equity of redemption in and to all the premises mentioned and described in the bill of complaint, was made and entered.
The petition to open the decree is based upon the allegation of the petitioner, that he had no notice of, or knowledge of, said suit until after the entry of the final decree.
By the established practice of this court, a proceeding to open and vacate a decree, whether before or after enrollment, may be instituted by petition and order to show cause. Mitchell v.Mitchell, 96 N.J. Eq. 29.
There is adequate authority for the proposition that when fraud and surprise are relied on to open an apparent default, a decree may be opened on petition even after enrollment. Jones v.Read-Jones, 84 N.J. Eq. 479. *Page 145 
Vice-Chancellor Garrison, in White v. Smith, 72 N.J. Eq. 697,
refused to open the decree, but stated the law as follows: "The next matter for consideration is under what circumstances the prayer of such a petition will be granted."
In Brinkerhoff v. Franklin, 21 N.J. Eq. 334, Chancellor Zabriskie (1871), it was said (at p. 336): "It has long been settled that an enrollment will be vacated and a decree opened when the decree has been made unjustly against a right or interest that has not been heard or protected, when this has been done without laches or fault of the party who applies." Citing cases.
In Embury v. Bergamini, 24 N.J. Eq. 227, Chancellor Runyon (1873), speaking with respect to a default decree after an enrollment, the court said that it would be opened "for the purpose of giving the defendant an opportunity to make a defense, where such defense is meritorious, and he has not been heard in relation thereto, either through mistake, accident or surprise."
In Allaire v. Day, 30 N.J. Eq. 231, the court of errors and appeals said: "The court of chancery has discretionary power, even after enrollment, to open a regular decree obtained by default, for the purpose of giving the defendant an opportunity to make a defense on the merits, where he has been deprived of such defense, either by mistake or accident, or by negligence of his solicitor."
Subpoenas were issued and returned unserved upon the petitioner, with an affidavit by the sheriff of Atlantic county, that he was unable to find in his county, Hurd and numerous other defendants, and that he was credibly informed and verily believed that the said defendants are out of this state, and giving, among others, the address of Warren W. Hurd as Commercial Trust Bldg., St. Paul, Minn.
On November 30th, 1921, an order of publication was made requiring the absent defendants to appear, plead, answer or demur to the complainants' bill on or before the 31st day of January, then next, or that in default thereof such decree would be against them, as the chancellor should think *Page 146 
equitable and just. Said order also directed the publication and mailing of the notice of such order. Due proof of the publication of such order was made, and on the 16th day of February, 1922, an affidavit in the following words was filed:
"State of New Jersey: | ss.
County of Atlantic: |
Walter Hanstein, of full age, being duly sworn according to law upon his oath deposes and says that he is a member of the firm of Thompson Hanstein, solicitors of the complainant in the above-entitled cause, and the one actually entrusted with the conduct and management of this cause; that he has, in good faith, made diligent and careful inquiry for the residences and post offices addresses of the defendants hereinafter named, in the manner required by the rules of this court, and that he is credibly informed, in such manner that he believes it to be true that the said defendants reside at the following places, to wit:
Warren W. Hurd Commercial Trust Bldg., St. Paul, Minn. William E. Simpson " " " " " "
[List of approximately 30 additional names and addresses]
Deponent further says that he did on the 9th day of December, 1921, place in the post office of the city of Atlantic City, New Jersey, letters directed to the above-named persons at the above addresses, with the postage prepaid, containing a copy of the notice hereto annexed.
[Signed] WALTER HANSTEIN.
Sworn and subscribed before me this 30th day of January, 1922. [Signed] CLARENCE E. KNAUER, M.C.C. of N.J."
Hurd testified that he never received the notice, and that he had no knowledge of the suit until on or about the 15th day of June, 1923, when he received a letter from John C. Reed, a counselor-at-law of this state, advising him of the action. It is undenied that there was not at the time of the mailing of the notice and never had been any building known as Commercial Trust Building, in the city of St. Paul, Minn.
Hanstein received the information concerning Hurd's address from Schaffer, the complainant, who had a number of years prior thereto obtained it from the then president of the Realty Realization Company, the mortgagors in the mortgages held by Hurd. *Page 147 
Hanstein further testified that the envelope in which the notice was enclosed bore the return card of Thompson Hanstein, and that it never has been returned.
It is admitted that certain other notices, which Schaffer testified were addressed to Hurd at the same address, were received by him, and that the letter sent by Mr. Reed to Hurd, advising him of the suit, was also addressed in the same manner.
That during the entire interval Hurd was represented by counsel, who had on a number of occasions prior to the filing of the bill to foreclose, negotiated with Mr. Schaffer and his representatives in an endeavor to adjust the question of taxes. That immediately upon Hurd receiving Reed's letter he notified his attorney, who immediately communicated with the complainant.
Had the address obtained by Schaffer a number of years prior thereto been, at the time of the mailing of the notices, the post office address of Hurd, the presumption would be that the notice reached the person to whom it was addressed. Wells v.Schaffer, 98 N.J. Eq. 31. In the cited case, Vice-Chancellor Backes held that the force of the testimony of the complainants was in a great measure neutralized by that of Schaffer, and not of weight sufficient to overcome the presumption of truth given to the statutory affidavit, that Schaffer made service as the statute required.
While mailing of a notice properly addressed with postage prepaid raises a presumption that the notice reached the person to whom it was addressed, if there, by evidence which, if credited, would overthrow such presumption, a jury question is presented. Kruger v. Brown, 79 N.J. Law 418.
In Cresse v. Security Land Investment Co., 54 N.J. Eq. 447,
Chancellor McGill said (on p. 452): "I think that in this case it was incumbent upon the Bethlehem Iron Company (the petitioner) to unequivocally allege and establish that it was never served with notice of the suit in the manner prescribed by the eighteenth section of the Chancery act, so that it actually received the notice of the suit, or to allege surprise in some other form, which will justly call for this *Page 148 
court's interference in its behalf, and also that the defense it proposes to interpose is possessed of merit."
The complainant lays much stress upon the fact that the petitioner received many notices and letters addressed by Schaffer in the same manner, and argues that the petitioner's denial is not to be credited by reason of such other letters being received. The fact that some letters improperly addressed were delivered is not proof that all letters so addressed would likewise be delivered.
The petitioner, holder of mortgages aggregating about a half million dollars, took steps in each instance where it is proven or he admits having received notices to protect his interest. Upon receiving the letter from Mr. Reed, telling him of the decree, he summons his counsel, who at once begins negotiations to adjust the matter of difference. The fact that he took no steps to answer the bill filed in this cause is corroborative of his statement that he did not receive the notices. If, as intimated at the hearing, he was in doubt as to the value of his holdings, the ordinary man, upon receiving notice of a suit concerning mortgages, would at least consult with his counsel, who had the matter in charge, and at least seek advice. This was not done.
Considerable stress is also laid upon the fact that Hurd did not pay taxes for subsequent years upon this property. When asked concerning these taxes, he answered, on page 68: "Didn't pay those. I didn't have to, as I understood it. It belonged to the title holder. I didn't have the title to this land. I held mortgages and the parties holding the title, I was looking to them to pay those taxes."
He was correct in this construction, for "it is the duty of a mortgagor to pay taxes, and municipal liens, and to keep down prior encumbrances." Stewart v. Fairchild-Baldwin Co., 90 N.J. Eq. 139.
The order made in this case was set aside, but the above statement was not criticised. Am. Eng. Encycl. L. (1sted.) tit. "Mortgages" 814; 27 Cyc. tit. "Mortgages" 1253;19 R.C.L. tit. "Mortgages" § 180, were also cited. *Page 149 
I am convinced that the evidence establishes that Hurd was never served with the notice of the suit as prescribed by the Chancery act, and that he never received the said notice.
The application to open the decree is admittedly for the purpose of paying the amount due to the complainant.
The second prayer of the bill is "that an account may be taken of the amount due on complainant's various certificates of tax sales." This has been done.
The third prayer is "that the defendants, or one of them, may be decreed to pay the complainant the amount so found due, with interest and principal, by a short day to be appointed by this court, and that in default of such payment they and each of them be debarred and foreclosed of all right and equity of redemption in said lands, and every part thereof."
The day was fixed, no payment was made and the decree final was made and entered.
The petitioner had no notice of, and had no knowledge of, these orders until informed thereof after the final decree.
In Bourgeois v. Risley Real Estate Company, 82 N.J. Eq. 211,
Vice-Chancelor Backes found that "where attached property valued at $25,000 was sold to an attaching creditor for $1,870 under a judgment for $2,662.34, and the creditor thereupon sued in equity to set aside an alleged fraudulent conveyance of the property to a corporation, which conveyance was found to be fraudulent, he was only entitled to the amount due on his debt and not to the property, under the rule that he who seeks equity must do equity."
The vice-chancellor said: "To decree the lands absolute in the complainant would create a situation quite as iniquitous and oppressive and as obnoxious to a court of conscience as that arising out of the fraudulent conduct of the defendants. Satisfaction of the debt and not pillage of the debtor's estate is equity's relief." Citing Payne v. Burks, 4 B. Monr. 492.
The facts in the present case show a very analogous situation to that which Vice-Chancellor Backes described in the case just cited. *Page 150 
The petitioner, Hurd, is the owner of mortgages aggregating about $500,000. He testifies, and is not contradicted, that he and his then associates paid the entire principal consideration in full, and details how the amount was made up. He also testifies, and this also is not disputed, that to redeem from Schaffer it would take "upward of $50,000," and that he is prepared to pay the amount found to be due, or to pay the same into court.
Using the words of Vice-Chancellor Backes, in Bourgeois v.Risley Real Estate Co., supra: "It seems to me that the complainant must be content with the grant of that prayer for relief which asks that "the defendants pay the debt."
In Wells v. Schaffer, supra, decided by Vice-Chancellor Backes less than a month ago, he said: "The court will seize upon the slightest flaw of substance in tax sales to restore property to the owner.
"The judicial attitude toward tax sales is reflected in the principle reiterated by Vice-Chancellor Lewis in Harrington v.Horster, 89 N.J. Eq. 270."
The evidence convinces the court that the notice to absent defendants was not received by the defendant (petitioner Hurd); that he proceeded with due diligence after obtaining knowledge of the decree, and that the purpose of opening the decree is to obtain the opportunity to pay the debt complained of, is of a meritorious and equitable nature.
 An order to open the decree will be advised. *Page 151