My attention was first directed to the proceedings in this matter upon an application for a rule to show cause why a final decree to foreclose a tax lien should not be opened and set aside. Upon return of the rule, argument was heard and a decision was reached opening the decree. The original proceeding in this matter was a suit to foreclose a tax lien amounting to seventy-nine dollars and eighty-nine cents ($79.89) and this had progressed to the entry of the final decree. The property affected was shown to be in excess of sixty thousand dollars ($60,000) in value.
The action to foreclose the tax lien was ex parte and Henry Meyers Bogert, the petitioner for the rule to show cause and the defendant in above entitled cause, alleged that he had no knowledge of the unpaid tax, or of the foreclosure proceedings, until he was served with a copy of the final decree in January, 1928. Bogert is a man of high standing and of excellent *Page 93 
reputation. He has been a resident of Bergen county since boyhood and is in affluent circumstances. His affidavit and statement that he knew nothing about the proceedings of the Harrington Company until the final decree are entitled to great weight. The affidavit of the deputy sheriff, who served Bogert, is not conclusive. In it, he says:
"It is my custom to serve papers between nine o'clock A.M. and four o'clock P.M. on week days, and I presume these papers were served upon Henry Meyers Bogert between such hours, but I have no record or recollection of the hour of service. I have no personal knowledge or recollection of any kind as to the service of the above papers. I am not personally acquainted with Henry Meyers Bogert and do not know if he is an old man or a young man."
The deputy sheriff's affidavit further shows that on June 21st, 1927, he returned to the sheriff's office before the office closed for the day and made out a slip showing service of a subpoena on Bogert, thus indicating that the time of service was prior to four o'clock. The affidavit of Bogert, which is supplemented and corroborated by one Plenty, vice-president of the Hackensack Trust Company, is to the effect that Bogert left his home prior to eight o'clock A.M. on June 21st, 1927, attended a meeting of the directors of the Hackensack Trust Company held about eight o'clock A.M., and then took a train to his office in New York City and did not return to his home until after four o'clock P.M. Other than the return of the deputy sheriff, the only proof we have indicating that Bogert had knowledge of the tax lien suit is contained in the affidavit of Brockhurst, of the Harrington Company. He says he talked over the telephone with Bogert about the matter, but Bogert denies any such conversation. Brockhurst, having so many of these matters to look after, may be mistaken in his recollection, and I believe the story that Bogert knew nothing of the entire proceedings until the service of the final decree upon him. I am led to this conclusion by Bogert's present attitude, his financial ability to pay, and by the gross inequality between the claim of complainant and the value of the property. These proceedings, if they stand, would permit the complainant to become the owners of property worth more than sixty thousand dollars ($60,000) because of an unpaid *Page 94 
tax amounting to seventy-nine dollars and eighty-nine cents ($79.89). At the argument on return of the rule, I brought this matter to the attention of solicitor of the complainant, and asked if any attempt had been made to adjust matters with the defendant. It was stated that they were willing to do so. Subsequently in the discussion, it developed that the complainant, to release its rights, desired the sum of ten thousand dollars ($10,000), but the defendant naturally refused this. The defendant tendered himself ready at any time to redeem and pay any reasonable fees and charges.
The return of the service of the final decree by the deputy sheriff is incorrect, as it states that a copy of the final decree was served on Monday, January 9th, 1928, upon Catherine C. Bogert, wife of Henry Meyers Bogert, personally by delivering a certified copy to the said Catherine C. Bogert at her place of residence and upon Bogert personally. Mrs. Bogert was at this time confined in the Hackensack Hospital where she had been continuously from November 21st, 1927, until January 21st, 1928. The return of the service of the final decree, as far as Bogert is concerned, is correct, he having received it, and, as he alleges, it was the first knowledge he had of the unpaid tax, or of the foreclosure proceedings.
A great hardship, of course, would be entailed if the defendant was to be thus deprived of his property. The proceeding by strict foreclosure in tax liens is authorized by our law, but in the case of Shepard v. Barrett, 84 N.J. Eq. 408, the view is indicated that strict foreclosure of a mortgage would not be allowed by this court if the value of the land exceeded the amount of the mortgage. The opening of decrees obtained by default, and to prevent fraud and injustice, is frequent in this court. Among the numerous cases, some of which may be referred to, are: Boyer v. Boyer, 77 N.J. Eq. 144; Day v. Allaire,31 N.J. Eq. 303; Bourgeois v. Risley Real Estate Co., 82 N.J. Eq. 211; Steinhardt Brothers and Company v. Cohen, 86 N.J. Eq. 323;Welles v. Schaffer, 98 N.J. Eq. 31; Harrington Company v.Horster, 89 N.J. Eq. 270; Schaffer v. Hurd, 98 N.J. Eq. 143.
It seems to be unfair and unjust to permit the complainant to take advantage of the situation. Its attitude shocks the *Page 95 
conscience, and a decision in its favor would be highly inequitable and work a grave injustice. The return of the title must, of course, be upon terms which could be fixed by the court. Bogert has offered, as before stated, to redeem the property upon the payment of the amount shown to be due, together with the interest thereon, and the cost of all proceedings.
An order may be entered in accordance with the views above expressed.