**In re 2435 PLAINFIELD AVENUE, INC., Debtor.**

**2435 PLAINFIELD AVENUE, INC., Plaintiff,**

v.

**TOWNSHIP OF SCOTCH PLAINS, Defendant.**

**Bankruptcy No. 98–31892.**
**Adversary No. 98–3118.**

United States Bankruptcy Court, D. New Jersey.

Aug. 6, 1998.

Barry W. Frost, Teich, Groh & Frost, Trenton, NJ, for Plaintiff/Debtor.

Gary S. Jacobson, Jacobson & Brecher, Mountainside, NJ, for Defendant.

Patricia S. Roach Bruck, Skey, Dumont & Matejek, Princeton, NJ, for Better Homes and Gardens.

Michael Zindler, Markowitz & Zindler, Lawrenceville, NJ, for Mauro Checchio, Portia Checchio, Ernest DiFrancesco and Susan DiFrancesco.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by defendant Township of Scotch Plains (the "Township") to dismiss a complaint filed by 2435 Plainfield Ave., Inc. (the "debtor") for failure to state a cause of action pursuant to FED.R.CIV.P. 12(b)(6) incorporated by reference in FED.R.BANKR.P. 7012 and on the Township's motion to quash six subpoenas for Rule 2004 examinations issued on behalf of the debtor. The debtor's principal argument is that the Township obtained title to the property from the debtor by fraud perpetrated in connection with foreclosure of a property tax lien. Alternatively, the debtor argues that the disparity between the taxes due and the value of the property was so great that the transfer of title should be set aside because it shocks the conscience. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O). The following shall constitute the court's findings of fact and conclusions of law.

### I. FINDINGS OF FACT

The instant dispute concerns the foreclosure by the Township of a property tax lien on real property commonly known as 2435 Plainfield Avenue, Block 4303, Lot 12 in the Township of Scotch Plains (the "property"). The debtor acquired the property on December 8, 1989. A tax sale certificate for the property was sold to the Township on December 4, 1990. The Township filed an in rem tax foreclosure complaint on October 11, 1995. The Township published a notice of foreclosure on December 30, 1995. The final judgment of in rem foreclosure was entered on August 30, 1996.

The debtor claims there were procedural irregularities in the foreclosure case which prejudiced the debtor. On January 16, 1997

the debtor obtained an order to show cause from the Superior Court of New Jersey, Chancery Division as to why the final judgment of in rem foreclosure should not be reopened. The debtor's application was denied on March 21, 1997 in a bench decision. The debtor appealed this decision and the appeal remains pending.

The debtor filed a petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code" or the "Code") on February 17, 1998. On March 20, 1998 the debtor filed this adversary proceeding against the Township. The first count of its complaint alleges that on January 4, 1996, prior to the foreclosure, the debtor entered into a contract for sale of the property to K. Hovnanian and Companies of North Jersey, Inc. ("Hovnanian"). The complaint alleges that on January 16, 1996 Hovnanian arranged to meet with Township representatives regarding the proposed sale. The complaint alleges that in May, 1996 the Township "amended the zoning ordinance so that the property could be developed in the application process consisting of a subdivision or site plan application to the planning board or other than as a use variance application to the board of adjustment." Complaint, at Count I, ¶ 15.

The complaint avers that Hovnanian was aware of the tax arrears and was ready and willing to pay them. The complaint alleges that Ernest DiFrancesco (presumably, on behalf of the debtor) faxed a letter to Carmen Mendiola, attorney for the Township in the foreclosure proceeding, proposing to make partial tax payments. The complaint also alleges that this proposal was never presented to the Township.

The complaint alleges that the tax arrears due as of December 31, 1996 were $93,815.36. The complaint states that the property was worth $900,000.00 at the time of the foreclosure.

The complaint argues that the debtor's property was transferred without the debtor receiving reasonably equivalent value, that the Township foreclosed on the property with the intent to hinder, delay and defraud the debtor, and that the property was conveyed to the Township for less than fair consideration while the debtor was made insolvent by the transfer. From these assertions, the complaint concludes that the transfer of the property was a fraudulent conveyance pursuant to N.J.Stat.Ann. § 25:2–1 et seq. As a result, the first count of the complaint requests that the in rem foreclosure be set aside.

The second count of the complaint realleges all the foregoing assertions and contends that the Township owed a duty of good faith and fair dealing to the debtor. The complaint avers that the Township was aware of Hovnanian's intent to purchase the property and that Hovnanian relied on the Township's actions, specifically the rezoning of the property. The complaint alleges that no one on behalf of the Township informed Hovnanian that the Township was entering a judgment of foreclosure. The complaint further alleges that the debtor attempted to resolve the tax arrearages by paying them over time but that this proposal was never presented to the Township Council. The second count concludes that the foregoing amounted to a breach by the Township of its duty of good faith and fair dealing. The complaint asserts that as a result of the alleged breach, the debtor's property was transferred for less than reasonably equivalent value and less than fair consideration, resulting in a windfall to the Township. As a result, the second count requests damages for the Township's alleged bad faith and unfair dealing.

On or about May 11, 1998 township officials including George Albanese, Thomas E. Atkins, Mauro Checchio, Rose Maccari, Joan Papen, and Irene Schmidt, were served with subpoenas for examination under Fed. R.Bankr.P. 2004. The subpoenas directed the officials to appear for depositions and to produce "All documents, contracts, correspondence and memoranda regarding the municipal tax foreclosure proceedings against 2435 Plainfield Avenue, Inc."

### The Township's Position

The Township contends that the debtor's complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). The Township makes two primary arguments: 1)

that N.J.STAT.ANN. § 54:5–104.65 prevents the avoidance of a tax sale foreclosure as a fraudulent transfer under N.J.STAT.ANN. § 25:2–20 et seq., and 2) the Township's conduct of the tax foreclosure could not breach any duty of good faith and fair dealing since there was no privity of contract with the debtor.

In support of its first point, the Township asserts that an in rem tax foreclosure may not be avoided under New Jersey's Uniform Fraudulent Transfer Act ("UFTA"). The Township contends that a tax foreclosure and recording of judgment or certificate are expressly excluded from the reach of the UFTA by virtue of N.J.STAT.ANN. § 54:5–104.65. The Township also argues that for a transfer to be fraudulent under the UFTA, the transfer must be made by the debtor, with the intent to hinder, delay or defraud a creditor of the debtor. The Township contends that because the tax obligation was imposed by the Township and the tax foreclosure was conducted by the Township, relief cannot be granted under N.J.STAT.ANN. § 25:2–25.

The Township further contends that the tax foreclosure sale may not be avoided as a transfer for less than reasonably equivalent value. The Township asserts that it has been held in this district that the price received at a tax foreclosure sale conducted in accordance with New Jersey law is conclusively presumed to be the "reasonably equivalent value" of the foreclosed property.

The Township also argues that since the issue of the propriety of the tax foreclosure sale has been resolved by the superior court, collateral estoppel precludes the issue from being relitigated before the bankruptcy court. The Township asserts that the alleged procedural deficiencies in the foreclosure were determined in the superior court to be immaterial and to provide no basis to upset the foreclosure judgment. The Township asserts that collateral estoppel is applicable even though the state court adjudication is subject to appeal. The Township adds that the bankruptcy court is prohibited from reviewing the state court's judgment by the Rooker–Feldman doctrine which proscribes

lower federal courts from sitting as effective courts of appeal for state court decisions.

In opposition to the second count of the debtor's complaint, the Township asserts that its conduct of the tax foreclosure could not breach any duty of good faith and fair dealing since there was no privity of contract between the Township and the debtor. The Township maintains that no duty of good faith and fair dealing may be imposed where there is no contractual agreement between a private party and a municipality. The Township further claims that the debtor's arguments were addressed and dismissed by the superior court and are therefore precluded as a matter of law.

The Township's second motion requests that the court quash six Rule 2004 subpoenas served upon various present and past Township officials. The Township alleges that Ernest DiFrancesco, the debtor's president, served the subpoenas personally while wearing a badge and carrying a concealed weapon to intimidate the persons served.

The Township argues that the subpoenas should be quashed because: 1) the court should not allow a Rule 2004 examination regarding matters which are the subject of a pending adversary proceeding; 2) a Rule 2004 exam should not be used to abuse or harass witnesses; 3) a Rule 2004 exam should not be allowed if it involves matters barred by collateral estoppel; and 4) the debtor cannot meet his burden of demonstrating good cause for the Rule 2004 examination at this juncture.

The Township maintains that the subpoenas should be quashed because the debtor is impermissibly using the broad scope of Rule 2004 instead of the more limited scope of the Federal Rules of Civil Procedure for discovery in the instant adversary proceeding. The Township suggests the debtor is trying to avoid the more stringent procedural rules governing discovery. The Township also contends that the subpoena should be quashed because service of the subpoenas by the principal of the debtor while wearing a badge and carrying a gun was intended to abuse, harass or intimidate witnesses. Further, the Township asserts that the very purpose of the subpoena is to gain informa-

tion on issues that have already been resolved by the state court and are not subject to further litigation in the bankruptcy court. Finally, the Township claims that its 12(b)(6) motion obviates the need for discovery and, therefore, the debtor cannot meet his burden of demonstrating good cause for the Rule 2004 examination.

### The Debtor's Position

The debtor opposes the Township's Rule 12(b)(6) motion. The debtor supports its opposition with four major points: 1) the foreclosure judgment should be reopened because the complaint alleges fraud in the conduct of the suit pursuant to N.J.STAT. ANN. § 54:5–87; 2) the provisions of the municipal tax sale laws which remove foreclosure judgments from the reach of the UFTA were not intended to protect the conduct of the Township; 3) the debtor was not given notice each year in which a tax sale was held on the property; 4) the foreclosure sale should be set aside because the price is shocking to the conscience; 5) the instant action is not barred by collateral estoppel; and 6) a duty of good faith and fair dealing arises from the special relationship between taxpayer and municipality.

The debtor contends that the fraudulent conduct of the agents and servants of the Township interfered with and hampered the Debtor's attempt to redeem the property and consummate its sale. Therefore, the debtor asserts that it has the right to reopen the foreclosure judgment because there was fraud in the conduct of the suit under N.J.STAT.ANN. § 54:5–87. The debtor argues that the statutory bar against finding a judgment and recording thereof to be a fraudulent transfer is inapplicable to bar the debtor's claim of fraud in the conduct of the suit.

The debtor also claims that the provisions of the municipal tax sale laws which remove foreclosure judgments from the reach of the UFTA were not intended to protect the conduct of the Township. The debtor contends that the purpose of the provisions of the municipal tax sale laws which remove foreclosure judgments from the reach of the UFTA was to shield municipalities from potential exposure to liability resulting from tax sales, which are often for a price that is substan-

tially lower than fair market value. The debtor argues that the statutes were not intended to protect the conduct of Township officials who withheld the debtor's partial tax payment proposal from the Township Council in order to acquire the property for the Township itself.

The debtor also asserts that the Township sold tax certificates without providing the debtor with notice thereof as required by statute. The debtor asserts that the Township failed to give the debtor notice of the sale of tax certificates because it wanted the property for itself. The debtor maintains that the court should set aside the foreclosure sale due to this defect in process.

The debtor further contends that the foreclosure judgment should be reopened because the debtor's property was transferred for less than reasonably equivalent value and for less than fair consideration. The debtor admits that when tax procedures are followed, inadequacy of price is generally an insufficient basis to set aside a sale; the debtor argues, however, that a sale can be set aside when the price is shocking to the conscience. The debtor asserts that because the value of the property is $900,000.00, the sale price of less than $100,000.00 sale is shocking to the conscience and is cause to set aside the sale.

The debtor further opposes the Township's Rule 12(b)(6) motion by asserting that collateral estoppel does not bar the debtor's action. The debtor contends that the superior court only settled the issue of whether the Notice of Foreclosure was properly served. The debtor contends that its allegation of fraud in the conduct of the suit was not raised or litigated in the superior court and therefore is not barred by collateral estoppel.

Finally, the debtor avers that the Township owes a duty of good faith and fair dealing to the debtor. The debtor claims that a duty of good faith and fair dealing exists between all taxpayers and governing bodies. The debtor claims that the Township breached its duty to the debtor when it employed its fraudulent plan to secretly divest the debtor of its interest in the property.

Regarding the Township's motion to quash the debtor's Rule 2004 subpoenas, the debtor requests that the court deny the Township's motion. The debtor argues that it has established good cause to request depositions. The debtor contends that the certifications attached to its brief clearly show that the Township Council was never presented with the requests made by the debtor and the debtor's attorney to make partial payment for real estate taxes. The debtor asserts that it is also clear that the Township Council members were not aware that taxes were a problem that needed to be addressed immediately. The debtor maintains that depositions of the Township Council members and employees are necessary to establish the debtor's claim of fraud. The debtor claims that granting of the request to quash the subpoena would cause the debtor and other creditors undue hardship. In the alternative, the debtor requests that the court permit depositions pursuant to FED.R.BANK.P. 7026.

## II. CONCLUSIONS OF LAW

### A. THE TOWNSHIP'S RULE 12(b)(6) MOTION IS DENIED AS TO THE FIRST COUNT AND GRANTED AS TO THE SECOND COUNT.

### 1. Standards Governing a Rule 12(b)(6) Motion.

The defendant contends that the debtor's complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to FED.R.CIV.P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the court accepts as true "all well-pleaded allegations in the complaint and construe[s] all reasonable inferences therefrom that can be drawn from the alleged facts in the light most favorable" to the plaintiff. *Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc.*, 998 F.2d 1185, 1188 (3d Cir.1993), *cert. denied, White Consolidated Industries, Inc. v. Pension Benefit Guaranty Corp.*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). *See also Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 809 (3d Cir.1990); *Town of Secaucus v. United States Department of Transportation*, 889 F.Supp. 779, 791 (D.N.J.1995), *aff'd*, 79 F.3d 1139 (1996); *MCI Telecommunications Corp. v. Graphnet, Inc.*, 881 F.Supp. 126, 128 (D.N.J.1995). The burden of proof on a 12(b)(6) motion is on the movant. *In re Corestates Trust Fee Litigation*, 837 F.Supp. 104, 106 (E.D.Pa.1993), *aff'd*, 39 F.3d 61 (3d Cir.1994).

Dismissal is warranted under Rule 12(b)(6) only if no relief could be granted under any set of facts alleged by the plaintiff. *Blaw Knox*, 998 F.2d at 1188. A complaint should not be dismissed unless some "insuperable bar to relief is apparent on the face of the complaint..." *Altemose Construction Co. v. Atlantic, Cape May and Parts of Burlington, Ocean and Cumberland Counties Building Trade Council*, 493 F.Supp. 1181, 1183 (D.N.J.1980). A judge may not dismiss a complaint under Rule 12(b)(6) because he disbelieves the plaintiff's allegations. *Zucker v. Quasha*, 891 F.Supp. 1010, 1013 (D.N.J. 1995) (citing *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

As expressed by the Supreme Court, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See Town of Secaucus*, 889 F.Supp. at 791 and *MCI Telecommunications*, 881 F.Supp. at 128 (citing *Conley*, 355 U.S. 41, 78 S.Ct. 99). The Supreme Court summarized the test for granting motions under Rule 12(b)(6) as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *See also Simon v. Cebrick*, 53 F.3d 17, 19 (3d Cir. 1995) ("The test for reviewing a 12(b)(6) mo-

tion is whether under any reasonable reading of the pleadings, plaintiff may be entitled to relief.").

As a general rule the court may not consider matters outside the pleadings in deciding a Rule 12(b)(6) motion. FED.R.CIV.P. 12(b); *Kelly v. Borough of Sayreville*, 927 F.Supp. 797, 805 (D.N.J.1996), *aff'd*, 107 F.3d 1073 (holding that court must limit its consideration on a Rule 12(b)(6) motion to facts alleged in the complaint). The relevant portion of Rule 12(b) states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED.R.CIV.P. 12(b). As such, where courts consider matters outside the pleadings, a Rule 12(b)(6) motion must be converted to a summary judgment motion under Rule 56. *Caldwell Trucking PRP Group v. Spaulding Composites, Co., Inc.*, 890 F.Supp. 1247, 1252 (D.N.J.1995) (acknowledging general rule that court must convert Rule 12(b)(6) motion to a Rule 56 motion when matters outside the pleadings are considered.) When a court sua sponte converts a Rule 12(b)(6) motion to a motion for summary judgment it must notify the parties of its intention and provide them an opportunity to submit materials admissible in a summary judgment proceeding. *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989) ("it is reversible error for a district court to convert a motion under Rule 12(b)(6) or Rule 12(c) into a motion for summary judgment unless the court provides notice of its intention to convert the motion and allows an opportunity to submit materials admissible in a summary judgment proceeding...."). It is well established that before converting a motion to dismiss into a motion for summary judgment, the court must provide adequate notice to the parties. *Hilfirty v. Shipman*, 91 F.3d 573, 578 (3d Cir.1996). The notice does not mandate an oral hearing, but rather "invokes the Rule 56(c) provision for 10 days' advance notice to the adverse party that the motion and all materials in support of or in opposition to the motion will be taken under advisement by the trial court as of a certain day." 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE AND PROCEDURE § 12.34[3][b] (3d ed.1998).

In deciding a Rule 12(b)(6) motion the court may refer to documents on which the complaint is based, including undisputedly authentic documents attached to a motion to dismiss if the plaintiff's claims are based on those documents, documents attached to the complaint, and documents specifically referred to in the complaint without triggering conversion to a motion under Rule 56. *Interfaith Comm. Organization v. AlliedSignal, Inc.*, 928 F.Supp. 1339, 1345 (D.N.J.1996); *Chester County Intermediate Unit*, 896 F.2d at 812. The court may also consider public records. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir.1994); *Caldwell*, 890 F.Supp. at 1252; 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2] (3d ed.1998). The court, however, is prohibited from considering other material in deciding a Rule 12(b)(6) motion. The court may not consider affidavits. *See Temp–Resisto Corp. v. Glatt*, 18 F.R.D. 148, 151 (D.N.J.1955). The "court is limited to the facts alleged in the complaint" and may not consider facts "raised for the first time by counsel in it legal memorandum." *Town of Secaucus*, 889 F.Supp. at 791; *MCI Telecommunications*, 881 F.Supp. at 128–29. "[L]egal conclusions made in the guise of factual allegations are not given the presumption of truthfulness" afforded to factual allegations. *Hess v. Port Auth. Trans–Hudson Corp. (PATH)*, 809 F.Supp. 1172, 1175 (D.N.J.1992), *rev'd on other grounds*, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

Based on the foregoing authorities, in deciding the instant 12(b)(6) motion the court has only considered the complaint, the public record of the order to show cause proceeding in the superior court and the briefs submitted by the parties on the instant motion. The court has excluded from consideration the affidavits submitted in support of or in opposition to the motion and any facts which were not alleged in the complaint.

## 2. The Complaint Does Not State a Claim Upon Which Relief Can Be Granted Under A Theory of Fraud in the Conduct of the Suit.

The debtor asserts that his complaint states a claim upon which relief can be granted under N.J.STAT.ANN. § 54:5–87 which permits a judgment to be set aside for fraud in the conduct of the suit.[1] N.J.STAT.ANN. § 54:5–87 applies to an in personam action to bar the right of redemption while N.J.STAT.ANN. § 54:5–104.67 applies to an in rem proceeding to foreclose the right of redemption under the In Rem Tax Foreclosure Act.[2] As the Township filed an in rem proceeding, N.J.STAT.ANN. § 54:5–104.67, not N.J.STAT.ANN. § 54:5–87, is applicable. This section states:

No application shall be entertained to reopen such judgment after three months from the date of the recording thereof in the office of the county recording officer, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the action.

N.J.STAT.ANN. § 54:5–104.67.

■ The three month period of limitations articulated in this section does not apply to fraud. *Sourlis v. Borough of Red Bank,* 220 N.J.Super. 434, 437, 532 A.2d 740, 741 (App.Div.1987) (stating that the three month period of limitations applies to all grounds other than lack of jurisdiction or fraud). However, a fraud action must be brought within the time limits set by N.J.Ct.R. 4:50–2. *See id.* N.J.Ct.R. 4:50–1 permits a court to relieve a party from a final judgment, inter alia, for fraud, misrepresentation or other misconduct of an adverse party. N.J.Ct.R. 4:50–2 requires that a motion for relief for the aforementioned reasons "be made within a reasonable time .. not more than one year after the judgment, order or proceeding was entered or taken."

■ In the instant case, the final judgment of foreclosure was entered on August 30, 1996. The instant complaint was filed on March 20, 1998—well past the one year limit.[3] Therefore, the debtor's complaint fails to state a claim upon which relief can be granted under a fraud in the conduct of the suit theory because such claim is time barred. *See Hanna v. United States Veterans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir.1975) (statute of limitations is appropriately considered on a Rule 12(b)(6) motion).

---

1. This section states in relevant part:
 The Superior Court, in an action to foreclose the right of redemption, may give full and complete relief under this chapter, in accordance with other statutory authority of the court, to bar the right of redemption and to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens, and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser. The judgment shall be final upon the defendants, their heirs, devisees and personal representatives, and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest and no application shall be entertained to reopen the judgment after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit. Such judgment and recording thereof shall not be deemed a sale, transfer, or conveyance of title or interest to the subject property under the provisions of the "Uniform Fraudulent Transfer Act," R.S. 25:2–20 et seq.

2. The superior court's Final Judgment In Rem Foreclosure, a copy of which is attached as Exhibit E to the debtor's Brief in Support of Motion to Dismiss Complaint for Failure to State a Claim filed on April 23, 1998, indicates that the Township proceeded under N.J.STAT.ANN. §§ N.J.STAT.ANN. 54:5–104.29 et seq., the In Rem Tax Foreclosure Act. N.J.STAT.ANN. § 54:5–85 et seq. and N.J.STAT.ANN. § 54:5–104.32 provide two distinct ways of foreclosing the right of redemption. N.J.STAT.ANN. § 54:5–85 et seq. provides an in personam action while N.J.STAT.ANN § 54:5–104.32 permits foreclosure of the right of redemption through an in rem proceeding. *See, e.g., Sourlis,* 220 N.J.Super. at 436, 532 A.2d at 741. *See* 13A JOHN A. CELENTANO, JR., NEW JERSEY PRACTICE, §§ 36.1–36.21 and §§ 36.22–36.29 (1991) for a discussion of foreclosure of the right of redemption under N.J.STAT ANN. § 54:5–85 et seq. and N.J.STAT.ANN. § 54:5–104.32 et seq. respectively.

3. Code section 108, which might have extended the time period for filing the complaint, is not applicable because the debtor would have had to file the bankruptcy case before the one year period expired for such period to be extended pursuant to section 108. The bankruptcy petition wasn't filed until February 17, 1998, more than one year after entry of the judgment.

450

### 3. The Complaint Does Not State a Claim Upon Which Relief Can Be Granted Under the UFTA.

The Township contends that the debtor's complaint fails to state a cause of action under the UFTA because N.J.STAT.ANN. § 54:5–104.65 prevents the avoidance of a tax sale foreclosure as a fraudulent transfer under N.J.STAT.ANN. § 25:2–20 et seq. The Township also claims that the UFTA requires that a fraudulent transfer be made by the debtor with the intent to hinder, delay or defraud a creditor of the debtor. The Township contends that, as the tax obligation was imposed by the Township and the tax foreclosure was conducted by the Township, the Township's transfers and intent cannot support relief under N.J.STAT.ANN. § 25:2–25.

A municipality has a lien on land for taxes assessed against the land. N.J.STAT.ANN. § 54:5–6. Where taxes are not paid, the municipality can sell the property to enforce the lien. *Id.* at § 54:5–19. A municipality may purchase a tax sale certificate and institute proceedings to foreclose the right of redemption. *Id.* at § 54:5–104.32. The right of redemption exists until it is foreclosed either by a judgment in the superior court or through an in rem proceeding. *Id.* N.J.STAT.ANN. § 54:5–104.32 prohibits such foreclosure from being considered a fraudulent transfer. This section states:

> Any municipality may proceed, In Rem, pursuant to the provisions of this act, similarly to bar rights of redemption, after said certificate has been recorded in the office of the county recording officer. *Neither the foreclosure nor the recording of any such judgment or certificate shall be construed to be a sale, transfer or conveyance of title or interest to the subject property under the provisions of the "Uniform Fraudulent Transfer Act," R.S. 25:2–20 et seq.*

N.J.STAT.ANN. § 54:5–104.32 (emphasis added).

The plain language of the statute clearly states that the foreclosure of a right of redemption is not a fraudulent transfer under N.J.STAT.ANN. § 25:2–20 et seq. The debtor's argument that this language is inap-

plicable because it was not intended to protect the type of conduct exhibited by Township officials in this case is unpersuasive. Where the plain language of a statute is clear, the court does not look beyond it unless "literal application would lead either to an absurd or futile result or one plainly at odds with the policy of the whole legislation." *Dutton v. Wolpoff & Abramson,* 5 F.3d 649, 654 (3d Cir.1993). Application of the plain language of N.J.STAT.ANN. § 54:5–104.32 would not lead to an absurd or futile result and is not at odds with the policy of finality in tax sales which the tax legislation appears to promulgate. The statute is not limited in its application to any particular circumstance and this court, therefore, will not read in such a limitation. As a result, the court finds that the plain language of N.J.STAT.ANN. § 54:5–104.65 is applicable to the instant foreclosure.

Because the court has found that N.J.STAT.ANN. § 54:5–104.65 prevents foreclosure of the right of redemption in a tax sale from being considered a fraudulent transfer, the debtor has not stated a claim upon which relief can be granted under the UFTA. As such, the court need not consider the Township's other arguments regarding the UFTA.

### 4. The Complaint Does State a Claim Upon Which Relief Can Be Granted Under a Fraudulent Conveyance Theory.

The court notes that the debtor's complaint alleges the elements of a fraudulent transfer under N.J.STAT.ANN. § 25:2–20 et seq., but concludes that the foreclosure amounts to a fraudulent conveyance under N.J.STAT.ANN. § 25:2–1 et seq. N.J.STAT.ANN. §§ 25:2–20 to 25:2–34 is the Uniform Fraudulent Transfer Act, and N.J.STAT.ANN. §§ 25:2–1 to 25:2–6 is the Uniform Fraudulent Conveyances Act ("FCA"). The FCA includes N.J.STAT.ANN. § 25:2–3 which states:

> Every conveyance, grant or alienation of real estate, or goods and chattels, or of any estate or interest therein, whether made by writing or otherwise, and every judgment and execution which have been or shall be contrived in fraud, covin or collusion, with intent to hinder, delay or de-

fraud creditors and others of their lawful actions, debts, damages or demands, shall be deemed and taken (only as against those persons, their executors, administrators or assigns, whose actions, debts, damages or demands are or may be hindered or defeated by such covinous or fraudulent devices and practices) to be utterly void and of no effect, any feigned consideration, color or other pretense to the contrary notwithstanding.

■ The above-quoted section permits creditors as well as "others" who have "lawful actions, debts, damages or demands" to avoid a transfer made with the intent to hinder, delay or defraud them. The debtor in the instant case could potentially fall within the ambit of the "others" designation. In his complaint the debtor alleges that the transfer was fraudulent as to the debtor in that it was effectuated by the Township with the intent to fraudulently deprive the debtor of the benefit of its property. Complaint, at Count 1, ¶ 23.

It is noteworthy that while N.J.Stat.Ann. § 54:5-104.32 specifically states that a tax foreclosure cannot be construed as a fraudulent transfer under the UFTA, N.J.Stat.Ann. § 25:2-20 et seq., it does not say that such foreclosure cannot be considered a fraudulent conveyance under the FCA, N.J.Stat. Ann. § 25:2-1 to -6. Under the construction principle of *expressio unius est exclusio alterius,* it follows that a tax foreclosure may be a fraudulent conveyance. Therefore, the debtor states a claim upon which relief can be granted under fraudulent conveyance law.

### 5. The Complaint Also States A Claim Upon Which Relief Can Be Granted on an Equity Theory.

■ The debtor also contends that the sale should be set aside because of the low sale price. The Supreme Court has stated that a foreclosure sale may be set aside "(under state foreclosure law, rather than fraudulent transfer law) if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'" *BFP v. Resolution Trust,* 511 U.S. 531, 542, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (citations omitted). In New Jersey a court may set aside a foreclosure for equitable reasons including inadequate price. *See Sovereign Bank FSB v. Kuelzow,* 297 N.J.Super. 187, 197–98, 687 A.2d 1039, 1044 (App.Div.1997):

> Strict enforcement of [the tax foreclosure law] is not only contrary to decisional authority, it is contrary to general equitable principles. "The rule seems to be that where under a statute providing for tax sales, a deed delivered will be presumptive evidence of title, equity may intervene to either prevent the sale, or if the deed be delivered, to cancel it." [citations omitted]
>
> The court also relies upon the general equitable principles which apply to the remedy of foreclosure. Foreclosure is a harsh remedy and equity abhors a forfeiture. A court of equity may invoke its inherent equitable powers to avoid a forfeiture and deny the remedy of foreclosure.

*See also Federal Title & Mortgage Guaranty Co. v. Lowenstein,* 113 N.J.Eq. 200, 204, 166 A. 538, 540 (Ch.Div.1933) (stating that although confirmation of judicial sale will not normally be refused for inadequacy of price, gross inadequacy of price sufficient to shock the conscience justifies a refusal to confirm); *Fidelity Union Trust Co. v. Ritz Holding Co. et al.,* 126 N.J.Eq. 148, 177, 8 A.2d 235, 250 (Ch.Div.1939) (stating that unavoidable hardship on part of mortgagor combined with attempt by mortgagee to seek an unconscionable advantage over mortgagor and gross inadequacy of price warrants denial of confirmation of foreclosure sale). This type of rationale has also been applied in a tax sale situation. *See Harrington Co. v. Bogert,* 104 N.J.Eq. 92, 94–95, 144 A. 330, 331 (Ch.Div. 1929) (holding where sale price was $79.89 and property was worth $60,000 and movant alleged he had no knowledge of tax sale, sale should be set aside to prevent injustice).

■ N.J.Ct.R. 4:50-1 contains a catchall provision which allows a court to grant relief from a judgment or order for "any other reason justifying relief from the operation of the judgment or order." This provision may be used to set aside a tax sale. *Pine Street Management Corp. v. City of East Orange,* 15 N.J.Tax 681, 686–87 (App. Div.1995) (discussing relief from judgment on tax appeals under 4:50–1(f) but using discre-

tion to deny relief in that case). A motion under this provision must be brought within a reasonable time. N.J.Ct.R. 4:50–2. Further, in order to receive relief under this provision the movant must show that it exercised the requisite due diligence, as a party who could have avoided the judgment from which it seeks relief with the exercise of reasonable diligence is not entitled to relief. *Pine Street Management Corp.*, 15 N.J.Tax at 687. Finally, to obtain relief under the catchall provision, the movant must show that " 'enforcement of the order would be unjust, oppressive or inequitable.' " *Id.* (citing *Quagliato v. Bodner*, 115 N.J.Super. 133, 138, 278 A.2d 500 (App.Div.1971)). As a result, it appears that the debtor could possibly have the tax sale set aside for inadequate price under N.J.Ct.R. 4:50–1(f).[4]

In the instant case, the debtor has alleged that the property is worth $900,000 and was sold for less than $100,000.00 in unpaid taxes. Complaint, at Count 1, ¶¶ 5, 18. The Township purchased the property free of encumbrances.[5] As indicated, the test for dismissal under Rule 12(b)(6) is whether accepting the debtor's facts and all reasonable inferences therefrom, the debtor could possibly recover. The debtor's factual allegations regarding the value and sale price

of the property lend support to the inference that the sale price may be so low as to shock the conscience or raise a presumption of fraud or unfairness. Therefore, the court holds that the debtor has stated a claim upon which relief can be granted under an equity theory.[6]

**6. The debtor's claim of lack of good faith and fair dealing is barred by collateral estoppel but the debtor's other claims are not barred by collateral estoppel or the Rooker–Feldman doctrine.**

The Township argues that the debtor's claims are barred by collateral estoppel and the Rooker–Feldman doctrine. The Township asserts that the debtor's claims are barred by collateral estoppel because the issue of the propriety of the tax foreclosure was resolved by the New Jersey Superior Court. The Township asserts that the allegations that the debtor contends amount to fraud were couched before the superior court as a breach of the Township's duty of good faith and fair dealing. Finally, the Township contends, without more, that the bankruptcy court is prohibited from reviewing the state court's judgment by the Rooker–Feldman

---

4. Although the court could not locate any case law discussing the setting aside of a tax sale for inadequate price under N.J.Ct.R. 4:50–1(f), the court sees no bar to making such an argument under this provision. Besides *Harrington*, the only case located by the court on the subject of setting aside a tax sale for inadequacy of price is *Morris Tp. v. Washington Heights Dev. Co. et al.*, 137 N.J.Eq. 595, 46 A.2d 45 (1946). In *Morris* the petitioner presented an order to show cause alleging that the difference between the taxes and the value of the property sold was so great as to shock the conscience. The court refused to reopen the judgment. *Id.* at 596–97, 46 A.2d at 46.

*Morris* appears to be distinguishable from the instant case, however, in that the *Morris* court did not address granting relief from a judgment for equity purposes but instead discussed only reopening a judgment for the reasons outlined in the tax sale statute. As a matter of equity, the decision in *Morris* may be inconsistent with that in *Sovereign Bank v. Kuelzow* and *Harrington v. Bogert, supra.* As such, *Morris* does not prevent the court from finding that relief from a final judgment in foreclosure may be granted for inadequacy of price under the catch-all provision of N.J.Ct.R. 4:50–1.

5. Foreclosure of the equity of redemption of a tax sale extinguishes all encumbrances on the land. N.J.Stat.Ann. § 54:5–104.64(a) states:

> The judgment shall give full and complete relief, in accordance with the provisions of this act ... to bar the right of redemption, and to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, and to adjudge an absolute and indefeasible estate of inheritance in fee simple in the lands therein described, to be vested in the plaintiff.

As such, foreclosure of the equity of redemption in a tax sale extinguishes any mortgage on such property.

6. This decision is consistent with the court's prior decision in *In re McGrath*, 170 B.R. 78 (Bankr.D.N.J.1994). *McGrath* addressed whether the sale of real property for the amount of property taxes was reasonably equivalent value for purposes of the fraudulent transfer provision of Bankruptcy Code section 548. *McGrath* did not address whether a tax sale could be avoided under the Fraudulent Conveyances Act or because the price was so low as to shock the conscience of the court.

doctrine which proscribes lower federal courts from sitting as effective courts of appeal for state court judgments.

 "The doctrine of collateral estoppel provides that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent cases based on a different cause of action involving a party to the prior litigation.'" *Glictronix Corp. v. American Telephone and Telegraph Co.,* 603 F.Supp. 552, 563 (D.N.J.1984) (quoting *Montana v. U.S.,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). The purpose of collateral estoppel (also called issue preclusion) is to "prevent litigation over issues that ... were actually decided in a prior suit in order to foster 'judicial economy, predictability and freedom from harassment' for litigants." *Sibert v. Phelan,* 901 F.Supp. 183, 186 (D.N.J. 1995) (quoting *Electro–Miniatures Corp. v. Wendon Co.,* 889 F.2d, 41 44 (3d Cir.1989)); *Kortenhaus v. Eli Lilly & Co.,* 228 N.J.Super. 162, 164, 549 A.2d 437, 438 (App.Div. 1988).

 The principles of collateral estoppel are applicable in bankruptcy proceedings including when the previous adjudication occurred in state court. *Baldino v. Wilson (In re Wilson)* 116 F.3d 87, 90 (3d Cir.1997); *In re Centennial Avenue Assoc. Limited Partnership,* 200 B.R. 800, 812 (Bankr.D.N.J. 1996) (citing *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *First Jersey National Bank v. Brown (In re Brown),* 951 F.2d 564, 571 (3d Cir.1991)). As a general rule, the full faith and credit statute requires "a federal court [to] give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which it was rendered." 28 U.S.C.A. § 1738; *Brown,* 951 F.2d at 568–69 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). *See Sibert v. Phelan,* 901 F.Supp. at 186 (citing *Watkins v. Resorts Int'l Hotel & Casino,*

*Inc.,* 124 N.J. 398, 591 A.2d 592, 598 (1991)) (stating "[c]ourts must apply the preclusion law of the jurisdiction whether the first judgment was entered"). The full faith and credit statute "embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments on their own courts."[7] *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. at 380, 105 S.Ct. 1327. *See also* 28 U.S.C.A. § 1738; *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982). Therefore, New Jersey law governs the applicability of collateral estoppel to the instant issue. *Id.; Brown,* 951 F.2d at 568.

In *In re Estate of Dawson,* 136 N.J. 1, 641 A.2d 1026 (1994), the New Jersey Supreme Court set forth the standards for the applicability of collateral estoppel:

> For the doctrine of collateral estoppel to apply to foreclose the relitigation of an issue, the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Id.* at 20–21, 641 A.2d at 1034–35 (citations omitted). Upon review of the state court transcript this court holds that the debtor's good faith and fair dealing argument is barred by collateral estoppel.

It appears that the debtor argued in state court that the Township breached its duty of good faith and fair dealing by secretly obtaining title through a tax foreclosure.

---

7. The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), *reh'g denied,* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (citing 28 U.S.C. § 1738).

Trans. 3/21/97 at 4:12–17. The Township also made due process allegations based on the Township's failure to properly notice the parties. *Id.* at 4:17–19. The state court judge found that the debtor did not show that there was ever an agreement between the Township and the debtor that the foreclosure proceedings would be stayed. *Id.* at 12:21–24. Therefore the state court concluded that there was not a relationship between the parties which would give rise to the imposition of the covenants of good faith and fair dealing, and, as a result, no breach of such covenants. *Id.* at 13:3–7. The superior court did find deficiencies in notice of the sale but determined these did not violate the debtor's due process rights and therefore did not constitute a basis to upset the foreclosure judgement. *Id.* at 13:14–24.

■ The debtor's breach of good faith and fair dealing argument satisfies all five collateral estoppel requirements. The breach of good faith and fair dealing argument asserted by the debtor in the superior court is the same argument the debtor now makes in the second count of its complaint. As both parties submitted briefs and reply briefs on the issue and the state court judge issued an opinion on the same, it is clear this issue was actually litigated in the state court. As the state court decision resolved the debtor's entire order to show cause after a hearing and the decision is currently on appeal, the state court's treatment of the issue is final. *Suarez v. Camden County Board of Chosen Freeholders,* 972 F.Supp. 269, 273–74 (D.N.J.1997) (collateral estoppel allows an issue to be accepted as final "if the issue to be deemed resolved has been fully and fairly litigated and the court has made clear that the particular issue has been completely resolved"); *Hills Dev. Co. v. Township of Bernards,* 103 N.J. 1, 59, 510 A.2d 621, 652 (1986) (citation omitted) (collateral estoppel applies if the prior court's decision is "sufficiently firm to be accorded conclusive effect"). *See also Dyndul v. Dyndul,* 620 F.2d 409, 412 (3d Cir.1980) ("Finality for purposes of issue preclusion is a more 'pliant' concept

than it would be in other contexts"). The determination of the existence of a duty of good faith and fair dealing on the part of the Township to the debtor was essential to the determination of the debtor's order to show cause, in that the breach of the alleged duty was one of the bases upon which the debtor sought vacation of the foreclosure judgment. Finally, as the debtor was the movant in both the state court proceeding and the instant complaint, the privity requirement for application of collateral estoppel has been met. Therefore, the state court determination that the Township did not breach a duty of good faith and fair dealing owed to the debtor prevents the debtor from asserting that otherwise in this court. As a result, the doctrine of collateral estoppel requires dismissal of the second count of the debtor's complaint.[8]

■ The court notes that, although the state court addressed the breach of good faith and fair dealing and notice issues, that court did not address the issue of whether any of the Township officials' actions amounted to any type of fraud. The court also did not address gross inadequacy of the sale price as a basis for setting aside the judgment. Therefore, these issues are not barred by the doctrine of collateral estoppel. As the Rooker–Feldman doctrine simply prohibits a lower federal court from acting as a court of appeals for a state court judgment, *Wilson,* 116 F.3d at 90, the doctrine would not bar the debtor's claims with respect to the inadequacy of price and the Township's actions amounting to fraud because these issues were not addressed by the state court.

The court notes as well that the Township does not argue that the entire controversy doctrine or the doctrine of claim preclusion (*res judicata*) are applicable, so those doctrines do not bar such claims.

**7. The Township's Rule 12(b)(6) Motion Is Denied as to the First Count and Denied as to the Second Count.**

As the court has identified two theories of recovery in the debtor's complaint which

---

**8.** The debtor does not assert lack of notice as a cause of action under which it is entitled to relief in its complaint but does recite that it did not receive proper notice in the factual allegations of its complaint. As this issue was already determined by the state court in the order to show cause proceeding, any lack of notice claim raised by the debtor in this court would also be barred by collateral estoppel.

state claims upon which relief can be granted under the first count, the Township's Rule 12(b)(6) motion is denied as to that count but granted as to the second count.

## B. THE TOWNSHIP'S MOTION TO QUASH THE DEBTOR'S 2004 SUBPOENA IS GRANTED.

The Township's second motion requests that the court quash six Rule 2004 subpoenas served upon various present and past Township officials. The Township argues that the subpoenas should be quashed because: 1) the court should not allow a Rule 2004 examination where an adversary proceeding is pending; 2) a Rule 2004 exam should not be used to abuse or harass witnesses; 3) a Rule 2004 exam should not be allowed if it involves matters barred by res judicata; and 4) the debtor cannot meet his burden of demonstrating good cause for the Rule 2004 examinations at this juncture.

The Township maintains that the subpoenas should be quashed because the debtor is impermissibly using the broad Rule 2004 examination as a substitute for discovery in the instant adversary proceeding in an attempt to avoid more stringent procedural rules that govern discovery under the Federal Rules of Civil Procedure. FED.R.BANKR.P. 2004 states in relevant part:

(a) **EXAMINATION ON MOTION.** On motion of any party in interest, the court may order the examination of any entity.

(b) **SCOPE OF EXAMINATION.** The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

FED.R.BANKR.P. 7001 indicates that "[a]n adversary proceeding is governed by the rules of ... Part VII." The rules in Part VII include Rules 7026 through 7037 which govern discovery and incorporate FED.R.CIV.PRO. 27 through 37 by reference. As such, an issue arises as to whether Rule 2004 can be employed when an adversary proceeding is pending to obtain information that constitutes discovery under rules 7026 and 7037. Although no case law exists in our jurisdiction on the propriety of Rule 2004 exams as to issues which are the subject of an adversary proceeding, this issue has been addressed in many other jurisdictions.

The majority of courts that have addressed this issue have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending. *See In re Symington,* 209 B.R. 678, 683–84 (Bankr. D.Md.1997) (stating that a Rule 2004 exam is undertaken before the filing of a lawsuit or motion whereas discovery under the Federal Rules of Civil Procedure occurs thereafter); *Sweetland v. Szadkowski (In re Szadkowski),* 198 B.R. 140, 141 (Bankr.D.Md.1996) ("Once an adversary proceeding has commenced ... discovery may be had only pursuant to the discovery provisions of the Federal Rules of Civil Procedure"); *In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr.N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to FED.R.BANKR.P. 7026 et seq., rather than by a FED.R.BANK.P. 2004 examination"); *In re Sutera,* 141 B.R. 539, 541 (Bankr. D.Conn.1992) (stating that Rule 2004 is inapplicable when contested matters or adversary proceedings have been commenced and are pending); *Intercontinental Enterprises, Inc. v. Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 274 (D.Colo.1991) (holding that federal discovery rules not Rule 2004 applied to examination of parties affected by adversary proceeding); *In re Valley Forge Plaza Assoc.,* 109 B.R. 669, 674 (Bankr. E.D.Pa.1990) ("once an adversary proceeding

or a particular contested matter is under way, discovery sought in furtherance of litigation is subject to the F.R.Civ.P. rather than the broader bounds of R. 2004"); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr.S.D.N.Y.1991) ("The cases are in agreement that once an adversary proceeding is in progress a creditor/party does not have a right to a 2004 examination"); *First Financial Savings Assoc. v. Kipp (In re Kipp)*, 86 B.R. 490, 491 (Bankr. W.D.Tex.1988) (stating that once an adversary proceeding is filed Rules 7026–7037 apply and a Rule 2004 exam "may not be used to circumvent the protections offered under the discovery rules"). *But see In re Sun Medical Mgmt. Inc.*, 104 B.R. 522, 524–25 (Bankr.M.D.Ga.1989) (permitting Rule 2004 examination to uncover possible fraud where adversary proceeding was pending). The basis for the prohibition lies in the distinction between the broad fishing expedition-like nature of the Rule 2004 exam, *see In re Bakalis*, 199 B.R. 443, 447 (Bankr.E.D.N.Y.1996) (stating that Rule 2004 exam is a broad "fishing expedition"), *In re Wilcher*, 56 B.R. 428, 434 (Bankr.N.D.Ill.1985) (same), and *In re Johns–Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y.1984) (same), and the more restrictive nature of discovery under FED. R.BANKR.P. 7026–7037. WILLIAM L NORTON, JR., 2 NORTON BANKRUPTCY LAW AND PRACTICE § 30:1 (2d ed. 1998) ("Discovery rules are much more stringent since any person has the right to have counsel present and all rules of evidence apply ..."). *See also In re Drexel Burnham*, 123 B.R. at 711 ("Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards").

A Rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct. *In re Symington*, 209 B.R. at 684. *Accord In re Bennett Funding Group, Inc.*, 203 B.R. at 27–28 (quoting Rule 2004(b) that examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any other matter which may affect the administration of the debtor's estate, or to the debtor's right to discharge"). On the

distinction between Rule 2004 and the discovery rules, *In re Sunridge Assoc.*, 202 B.R. 761 (Bankr.E.D.Ca.1996) instructs:

Rule 2004 is broad and far-reaching. There need be no pending dispute with defined issues to narrow the scope of the inquiry it permits. The discovery rules available in adversary proceedings and in contested matters are more restrictive in scope with respect to requirements of relevance and to protections available to the party required to comply.

*Id.* at 762. Based on this distinction "courts will usually not allow a 2004 exam where an adversary proceeding is pending, because the party requesting the exam is likely seeking to avoid the procedural safeguards of Bankruptcy Rules 7026–7037." 6 NORTON, *supra*, at § 141:35.

The court finds the above-discussed line of cases highly persuasive. In order to prevent injustice, and to insure that parties in bankruptcy adversary proceedings have the same rights as parties to a federal suit in a non-bankruptcy context, it is important to insure that the procedural safeguards of the discovery process provided in FED.R.CIV.P. 26–37, incorporated by reference in FED. R.BANKR.P. 7026–7037, are not avoided by permitting a Rule 2004 examination while an adversary proceeding is pending. As a result, this court holds that where a party seeks to depose another party or a witness on an issue which is the subject of a pending adversary proceeding, the examination cannot be conducted pursuant to Rule 2004, but must be conducted pursuant to the Federal Rules of Civil Procedure.

In the instant case the Rule 2004 subpoenas issued by the debtor command the Township officials to appear for a deposition and to produce "[a]ll documents, contracts, correspondence and memoranda regarding the municipal tax foreclosure proceedings against 2435 Plainfield Ave." As the subject of the instant adversary proceeding is to set aside the municipal tax foreclosure of the property, this issue is directly addressed by the adversary filing. As such, discovery must be conducted pursuant to Rules 7026–7037 and not Rule 2004. As a result, the Township's mo-

tion is granted and the debtor's Rule 2004 subpoenas served upon George Albanese, Thomas E. Atkins, Mauro Checchio, Rose Maccari, Joan Papen, and Irene Schmidt are quashed.

### III. CONCLUSION

Because a court may set aside a tax sale for equitable considerations including grossly inadequate price, the debtor's complaint states a cause of action upon which relief can be granted under an equity theory. This argument was not addressed by the state court and is, therefore, not barred by collateral estoppel. In addition, the complaint states a cause of action under the Fraudulent Conveyances Act, N.J.STAT.ANN. § 25:2–1 to 25:2–6. The Township's Rule 12(b)(6) motion is therefore denied to that extent. The complaint does, however, fail to state a cause of action under the UFTA and for breach of a duty of good faith and fair dealing. The motion is granted to that extent.

Because the debtor seeks to depose Township officials on issues which are the subject of a pending adversary proceeding, the deposition cannot be conducted pursuant to Rule 2004, but must be conducted pursuant to the Federal Rules of Civil Procedure. As a result, the debtor's 2004 exam subpoenas served upon George Albanese, Thomas E. Atkins, Mauro Checchio, Rose Maccari, Joan Papen, and Irene Schmidt are quashed.

The Township is to file two orders within ten (10) days under D.N.J. LBR 9072–1(c), one order in the adversary proceeding as to the motion to dismiss, and the other order in the main bankruptcy case as to the motion to quash. The debtor is then to arrange a phone conference to schedule further proceedings.